DIANNE HOLLEY, INDIVIDUALLY, GREG L. HINSHAW, GUARDIAN OF THE ESTATE OF ERVIN LEE HOLLEY AND DIANNE HOLLEY, GUARDIAN OF THE PERSON OF ERVIN LEE HOLLEY v. BURROUGHS WELLCOME CO., A NORTH CAROLINA CORPORATION, AND AYERST LABORATORIES: A DIVISION OF AMERICAN HOME PRODUCTS CORPORATION

No. 361A85

(Filed 7 October 1986)

**Sales § 24; Negligence § 29.3— action against drug manufacturers—inadequate warnings—summary judgment improper**

Summary judgment for defendants was improper in an action in which plaintiff alleged that his severe irreversible brain damage was caused by inadequate warnings by defendants of the dangers of certain anesthetic drugs manufactured and marketed by defendants and given to plaintiff where there was a genuine issue of material fact as to the extent to which plaintiff's doctor relied either directly or indirectly upon information contained in the package inserts and promotional information supplied by defendants, and an affidavit from plaintiff's expert pharmacologist constituted a forecast of competent evidence which, if believed by the jury, would establish the essential element of proximate cause.

Justices PARKER and BROWNING did not participate in the consideration or decision of this case.

APPEAL of right by defendants pursuant to N.C.G.S. § 7A-30(2) from a decision of a divided panel of the Court of Appeals, reported at 74 N.C. App. 736, 330 S.E. 2d 228 (1985), reversing summary judgment for defendants entered on 17 November 1983 by *Johnson, J.,* in Superior Court, DURHAM County.

*McCain & Essen, by Grover C. McCain, Jr., and Jeff Erick Essen for plaintiff-appellees.*

*Richard B. Conely, for defendant-appellant, Burroughs Wellcome Co.*

*Newsom, Graham, Hedrick, Bryson & Kennon, by E. C. Bryson, Jr., Joel M. Craig and Ann Windon Craver, for defendant-appellant, American Home Products Corporation.*

FRYE, Justice.

Ervin Lee Holley was admitted to the Duke University Medical Center on 5 April 1976 for elective knee surgery. He was twenty-one years old and generally of good physical and mental

health. The surgical procedure performed on 6 April 1976, however, resulted in severe irreversible brain damage to Mr. Holley.

On 31 December 1980, the guardians of the person and estate of Ervin Lee Holley filed a complaint against defendant pharmaceutical companies, seeking compensatory and punitive damages for the severe and permanent personal injuries to Mr. Holley. According to plaintiffs, defendants overpromoted the benefits and inadequately warned of the dangers of certain anesthetic drugs manufactured and marketed by defendants and administered to Mr. Holley. Plaintiffs contend that defendants had a duty to warn potential users of the dangers, symptoms and suggested methods of treatment thereof, and that the failure to adequately include such warnings in promotional information and package inserts proximately caused the injuries to Mr. Holley. In support of their complaint, plaintiffs offered the affidavit of Dr. Claude T. Moorman.

According to Dr. Moorman, Mr. Holley's injuries were due to hypoxia, or oxygen deprivation, resulting from malignant hyperthermia. Malignant hyperthermia is a condition in which the body's temperature is elevated, causing an increase in the level of blood acidity and a corresponding decrease in the body's ability to supply oxygen to vital organs, including the heart and brain. The condition is associated with anesthesia, and can be caused by use of the general anesthetic known as halothane, manufactured by defendant Ayerst Laboratories and marketed by defendant American Home Products under the name of Fluothane. Succinylcholine Chloride, a muscle relaxant manufactured and marketed by defendant Burroughs Wellcome under the trade name Anectine, can also cause malignant hyperthermia and may aggravate an existing condition. According to Dr. Moorman, the malignant hyperthermia suffered by Mr. Holley was triggered by Fluothane and Anectine prescribed by the anesthesiologist, Dr. Hooper, and administered to Mr. Holley by Elizabeth Evans, a certified registered nurse anesthetist. One of the keys to successfully treating malignant hyperthermia, according to Dr. Moorman, is early awareness that the condition exists. Attending medical personnel must therefore recognize the symptoms of the condition for what they are.

Although Mr. Holley's anesthesia chart shows "a typical picture of increasing hypoxia," in Dr. Moorman's opinion, these in-

dications apparently were not recognized as symptoms of malignant hyperthermia, either by Dr. Hooper or Nurse Evans, and thus not properly treated in time to prevent injury. According to plaintiffs and Dr. Moorman, primary sources of awareness of the adverse effects of using pharmaceuticals are the package inserts that accompany the products, entries in the *Physicians' Desk Reference*, a standard reference text in the medical profession, and promotional information found in advertisements and provided by product salesmen. None of these sources, in Dr. Moorman's opinion, contained sufficient information or warnings to put an anesthesiologist or nurse anesthetist on notice of the possibility that the use of Fluothane or Anectine might induce or aggravate malignant hyperthermia in a patient.

Defendants, in June 1983, moved for summary judgment and supported their motions with the affidavit and deposition of Dr. Hooper and with several other affidavits. In his affidavit and deposition testimony, Dr. Hooper denied relying on any of the information made available by defendants through advertisements, representations by sales people, the *Physicians' Desk Reference*, or package inserts regarding the use and possible dangers of their products. Dr. Hooper also denied that Mr. Holley's injuries had been caused by malignant hyperthermia.

Plaintiffs responded with the affidavit of pharmacologist Dr. James O'Donnell which supported the claims made in their complaint. Based on his stated knowledge of the information concerning malignant hyperthermia, the various sources of information provided by defendants concerning Fluothane and Anectine, and the reliance of physicians on such information, Dr. O'Donnell opined that assuming Holley's injuries in fact resulted from malignant hyperthermia, medical personnel responsible for his care failed to timely recognize the condition, due in part to defendants' overpromotion of Fluothane and Anectine and inadequate warning of the dangers attending its use. On 17 November 1983, the trial court granted summary judgment for defendants. Plaintiff excepted to entry of judgment in favor of defendants and gave timely notice of appeal.

The Court of Appeals reversed the trial court's order allowing defendants' motion for summary judgment and remanded the cause for trial, holding that there existed genuine issues of fact

that must be submitted to the jury. The Court of Appeals reasoned that the testimony of Dr. Hooper, relied upon by defendants in support of their motion for summary judgment, was "inherently suspect," therefore raising a question of fact as to his credibility. The majority also held that defendants' duty to warn of risks associated with the use of their drugs extended to the nurse anesthetist working under Dr. Hooper's supervision, thus raising a question of fact as to the adequacy of warning to the nurse anesthetist. Judge Arnold dissented, disagreeing with the majority holding that Dr. Hooper's testimony was "inherently suspect." From this decision, defendants appeal as a matter of right to this Court. N.C.G.S. § 7A-30(2).

The issue in this case is whether the Court of Appeals properly reversed the trial court's order of summary judgment entered against the plaintiffs. We agree with the Court of Appeals' decision, on grounds stated below.

Plaintiffs, in their complaint and supporting affidavit, set forth a theory of recovery sounding in negligence. As noted in the Court of Appeals' opinion, in order to establish a *prima facie* case of negligence in a products liability action, a party must show, "(1) evidence of care owed by the reasonably prudent person in similar circumstances; (2) breach of that standard of care; (3) injury caused directly or proximately by the breach, and (4) loss because of the injury." *City of Thomasville v. Lease-Afex, Inc.*, 300 N.C. 651, 656, 268 S.E. 2d 190, 194 (1980).

Plaintiffs allege that defendants' breach of duty owed to Mr. Holley to adequately warn medical personnel responsible for his care of the risks, symptoms and treatment of malignant hyperthermia, a condition associated with the use of their products, was the proximate cause of Mr. Holley's injuries. Defendants, on motion for summary judgment, offered an affidavit and the deposition testimony of Dr. Hooper, the anesthesiologist responsible for the prescription of anesthesia and care administered to Mr. Holley. Dr. Hooper testified that he did not rely on any information supplied by the defendants concerning the use of their respective products, Fluothane or Anectine.

The party moving for summary judgment has the burden of showing that there is no genuine issue as to any material fact. *Pembee Mfg. Corp. v. Cape Fear Construction Co.*, 313 N.C. 488,

329 S.E. 2d 350 (1985). In determining whether this burden is met, the moving party's "papers are scrutinized and all inferences are resolved against him." *Kidd v. Early*, 289 N.C. 343, 352, 222 S.E. 2d 392, 399 (1976). In addition, "[f]acts asserted by the party answering summary judgment motion must be accepted as true." *Norfolk and Western Railway Company v. Werner Industries, Inc.*, 286 N.C. 89, 98, 209 S.E. 2d 734, 739 (1974).

Keeping in mind these rules of construction, the precise question before this Court is whether there exists a genuine issue of fact as to the proximate cause of injuries suffered by Ervin Lee Holley.

Defendants contend that the facts about which there is no genuine issue demonstrate that the alleged negligence was not the proximate cause of the injury to Ervin Holley. In support of this contention, defendants rely on the deposition and affidavit of Mr. Holley's anesthesiologist, Dr. Hooper. Essentially, Dr. Hooper testified that he did not rely on information supplied by the defendants and further, that even if the package insert and promotional information supplied by the defendants had been exactly as plaintiffs claim they ought to have been, such compliance would have had no effect on the patient care rendered Mr. Holley, since Dr. Hooper was already quite aware of the possible effects of the drugs in triggering malignant hyperthermia, as well as the symptoms and treatment regime for this condition. Dr. Hooper admitted however that he had not had any personal experience with malignant hyperthermia. Defendants nevertheless contend that even if the warnings were inadequate and the products overpromoted, Dr. Hooper's testimony that he did not rely on such information demonstrates that there was no proximate causal relation between the alleged breach of duty and the injury to Holley.

Plaintiffs, on the other hand, contend that the forecast of evidence presented in this case is sufficient to raise a permissible inference that Dr. Hooper relied, directly or indirectly, on information from defendants' package inserts and from their promotional literature, thereby establishing a genuine issue of triable fact as to the element of proximate cause.[1] Plaintiffs argue essen-

---

1. Plaintiffs cite an Ohio Supreme Court case providing an excellent rationale for allowing the jury to decide if an adequate warning would have altered the doc-

tially that the testimony presented in this case establishes a fore-cast of evidence that the product information disseminated by drug manufacturers so permeates the entire medical profession that it constitutes a source of knowledge upon which Dr. Hooper relied in prescribing these products, and in providing the attending medical care.

At the deposition hearing Dr. Hooper testified on direct examination as follows:

> Q. Doctor, what is your source of knowledge of these anesthetic products and muscle relaxants that we have been talking about, or what sources of knowledge do you have?

> A. Any—Any practicing anesthesiologist has many sources of knowledge. I guess the basic source of knowledge is the education and training you get during your residency program, and then you build on that with reading textbooks, reading current medical literature, reading of the articles, listening to audio-digest tapes, attending meetings, hearing speakers on various topics.

Plaintiffs argue that the information published by the drug manufacturer is read and relied upon by writers and educators in the medical field and therefore such information permeates the sources of knowledge concerning Fluothane and Anectine. Plaintiffs further contend that the medical literature upon which Dr. Hooper admitted he relied is replete with promotional information supplied by the drug manufacturers. In support of this contention, plaintiffs rely in part on the affidavit submitted by defendant, Ayerst Laboratories Division of American Home Prod-

---

tor's conduct. *Seley v. G. D. Searle Company*, 67 Ohio St. 2d 192, 423 N.E. 2d 831 (1982). In that case plaintiff suffered a stroke and numbness in her left side as a result of defendant's failing to warn of the side effects of the contraceptive Ovulen. The prescribing doctor testified that "he had acquired full knowledge from other sources of the increased risk of hypertension and stroke in women with a history of toxemia." *Id.* at 839. The court rejected the contention that the doctor's independent knowledge broke the causal link. Instead the court stated:

> "A warning may serve purposes other than merely filling gaps in the intended recipient's knowledge—one may benefit from being warned or reminded of what he already knows. Similarly, only speculation can support the assumption that an adequate warning, properly communicated, would not have influenced the course of conduct adopted by a physician, even where the physician had previously received the information contained therein." *Id.*

ucts. John B. Jewell, the Director of Medical Affairs of Ayerst Laboratories stated the following:

> During the course of marketing Fluothane, Ayerst has kept the medical profession fully informed concerning the use of the anesthetic by means of professional literature distributions, medical journals, professional association meetings, package inserts, 'dear doctor' letters and detailmen. The Fluothane package insert has always been the key to the information disseminated by Ayerst to the medical profession. Each package insert contains the prescribing information for the drug, including Indications, Contraindications, Warnings, Precautions and Adverse Reactions. Copies of a new package insert, as changed from time to time with the advent of new knowledge, have been sent out by Ayerst, with 'dear doctor' letters, to the medical profession. Every package insert for Fluothane has always been submitted to and approved by the FDA before it is used.

> The prescribing information contained in the Fluothane package insert has always been produced and included in every advertisement of the drug . . . . The same information has also appeared in the Physician's Desk Reference (P.D.R.) since 1976.

> In addition to the package inserts, 'dear doctor' letters and journal advertising, Ayerst has disseminated information to the medical profession by means of detailmen. The instructions to the detailmen, who are sales personnel, have always been to conform their discussion of Fluothane to the information contained in the package insert . . . .

Plaintiffs also rely on the following affidavit of pharmacologist Dr. James T. O'Donnell as evidence of the extent to which medical professionals responsible for Holley's care relied on drug information supplied by the manufacturers:

> I am acquainted with the syndrome known as malignant hyperthermia and I am further familiar with the state of the knowledge in the professional literature concerning malignant hyperthermia at the time of the operation of Ervin Holley at Duke Hospital in 1976. I have also acquainted myself with the advertising of these two defendants of these

respective products as of the time of the operation in 1976 and before.

. . . .

I am also acquainted with the degree of reliance by medical and pharmacy personnel, including physicians, on information about drugs provided by the manufacturers from various sources including package inserts, mailings and oral information supplied by detailmen. In my opinion, I possess expert knowledge concerning the degree that the information supplied by drug manufacturers are [sic] relied upon by individuals in medical and health fields.

For reasons that I can elaborate upon in more detail in actual testimony, it is my opinion that the information supplied by these defendants for their respective drugs of Fluothane and Anectine were completely inadequate to warn users of these drugs of the dangers of the development of the syndrome of malignant hyperthermia and of any recommended treatment of it if it, in fact, developed . . . . [S]hould it be determined that Mr. Holley developed malignant hyperthermia during his operation in April, 1976, then I do hold the opinion that the failure of the health personnel responsible for his care at that time to recognize the malignant hyperthermia syndrome was, at least, due in part to the failure of the manufacturers of Fluothane and Anectine to warn of the propensities of their drugs to cause or trigger this syndrome and due in part to their over-promotion of these drugs without giving fair balance to the dangers of the drugs.

In *Dickens v. Puryear*, 302 N.C. 437, 453, 276 S.E. 2d 325, 335 (1981), this Court held that:

Summary judgment is . . . a device by which a defending party may force the claimant to produce a forecast of claimant's evidence demonstrating that claimant will, at trial, be able to make out at least a *prima facie* case or that he will be able to surmount an affirmative defense. Under such circumstances claimant need not present all the evidence available in his favor but only that necessary to rebut the defendant's showing that an essential element of his claim is non-existent or that he cannot surmount an affirmative de-

fense. *See Moore v. Fieldcrest Mills, Inc.*, 296 N.C. 467, 470, 251 S.E. 2d 419, 421 (1979); *see generally* Louis, *Federal Summary Judgment Doctrine: A Critical Analysis*, 83 Yale L.J. 745 (1974).

Drawing, as we must, all inferences of fact in favor of the plaintiffs, the affidavits and deposition testimony, taken together, are sufficient to defeat defendants' motion for summary judgment based on lack of proximate causal relationship between the alleged breach of duty and the injuries suffered by Holley.

First, plaintiffs' contention that Dr. Hooper relied directly or indirectly on defendants' overpromotion and inadequate warnings in package inserts finds support in defendant Ayerst's affidavit. The affidavit plainly indicates that during the course of marketing drugs the manufacturers seek to keep the medical profession fully informed through a variety of means including medical journals, professional literature distributions and package inserts. The information contained in the package inserts according to Ayerst was the key to information which they as manufacturers presented to the medical profession through various sources. Furthermore, Dr. Hooper in deposition testimony specifically stated that one of his sources of knowledge concerning Fluothane and Anectine was the medical literature. The testimonies of Ayerst and Dr. Hooper, therefore, when read together in a light most favorable to plaintiffs, raise a genuine issue of triable fact as to the extent to which Dr. Hooper relied either directly or indirectly upon information contained in the package inserts and promotional information supplied by the drug manufacturers.

Secondly, Dr. O'Donnell's affidavit, based on his asserted knowledge of professional literature concerning malignant hyperthermia, the information supplied by defendants concerning Fluothane and Anectine and the degree of reliance accorded such information by medical personnel in general, directly addresses the issue of proximate cause. His testimony that assuming Holley suffered from malignant hyperthermia, the failure of medical personnel to timely recognize and treat such condition was in part due to defendants' inadequate warnings and overpromotion, constitutes a forecast of competent evidence which, if believed by a jury, would establish the essential element of proximate cause in plaintiffs' negligence action.

For the foregoing reasons we find that there exists a genuine issue of fact as to whether the alleged negligence of defendants was the proximate cause of Ervin Lee Holley's injuries. Accordingly, we agree with the Court of Appeals that the trial court erred in allowing defendant's motion for summary judgment. Therefore, for the reasons stated in this opinion, the decision of the Court of Appeals is affirmed.

Affirmed.

Justices PARKER and BROWNING did not participate in the consideration or decision of this case.