GARY KENT ORMOND, A MINOR BY HIS NEXT FRIEND, VIR-
  GINIA BELL ORMOND v. DONALD CRAMPTON AND THE
  YOUNG MEN'S CHRISTIAN ASSOCIATION OF RALEIGH, INC.

No. 723SC533

(Filed 20 September 1972)

1. Appeal and Error § 22— failure to docket in time — petition for cer-
   tiorari

   Though the record on appeal was not docketed within the time
   allowed, the court on appeal treated it as a petition for certiorari,
   allowed it, and considered the appeal on its merits.

2. Appeal and Error § 49— exclusion of evidence — harmless error

   In an action to recover for injuries alleged to have been inten-
   tionally inflicted, exclusion of plaintiff's evidence tending to show
   hostile feelings of defendant toward plaintiff would not entitle plain-
   tiff to a new trial where the probative value of the evidence was so
   trivial that its exclusion could not have affected the result of the
   trial.

3. Criminal Law § 88; Witnesses § 8— time served by witness for convic-
   tions — admissibility

   It is proper to bring out on cross-examination the fact of prior
   criminal conviction and the length of time served on such conviction
   since the sentence imposed bears a relation to the gravity of the
   offense and has relevance to the credibility of the witness.

4. Negligence §§ 3, 37— failure to instruct on negligence — no error

   The trial court was not required to instruct the jury on issues
   of negligence where plaintiff's complaint alleged intentional infliction
   of harm since an intentional infliction of harm is not a negligent act.

5. Assault and Battery § 15— jury instruction on battery — issue of as-
   sault — no error

   Where the court's charge adequately apprised the jury of its
   duty to find that the defendant acted intentionally in the series of
   events which led to plaintiff's injury, plaintiff could not complain
   that the instruction was based on an issue of battery, while the ten-
   dered issue in the case was an assault.

APPEAL by plaintiff from *Peel, Judge,* 31 January 1972
Session of the CRAVEN Superior Court.

This is a civil action to recover for injuries alleged to
have been intentionally inflicted. A directed verdict was entered
as to the defendant, Raleigh Young Men's Christian Associa-
tion, and the jury found in favor of the defendant, Donald
Crampton.

---

Ormond v. Crampton

---

Plaintiff Ormond and several friends entered the property of Camp Seagull, owned by the Raleigh YMCA, at about 2:00 a.m. the morning of 2 August 1968 after having been drinking and driving around Craven and Pamlico Counties. According to their testimony they had no express purpose in entering the camp other than to entertain themselves by "messing around." Some of their group cut convertible tops on automobiles located in the parking lot and scratched obscene writings in the paint.

Four of the boys proceeded to the camp dock intending to race the boats located there; however, they failed to get the outboard engines started and decided to leave. At that time, they were discovered by a night watchman, who alerted several camp counselors.

Plaintiff and the other boys attempted to escape by hiding in the water; the others were apprehended by the camp staff near the dock area, but the plaintiff got out into the river.

Defendant's testimony showed that many of the camp's boats had been freed from their moorings, and that plaintiff was walking one of the boats down river in waist-deep water. Defendant started an inboard power boat with the intention of rescuing the boats drifting in the river, picked up a companion with a six-cell flashlight, and traveled along the channel leading from the dock to the river. About 10 or 15 feet ahead of the bow of the boat plaintiff suddenly surfaced from the water and was hit by the boat defendant was operating.

Plaintiff's testimony showed that he was standing in waist-deep water, alternately swimming and running to escape, that defendant shined the flashlight in plaintiff's direction, and intentionally ran the boat into him. Plaintiff's contentions were corroborated by witness Broadway, who testified that he had a clear view of the plaintiff at all times up until the moment of impact. The night watchman testified, however, that Broadway was apprehended and taken to a cabin before the plaintiff was injured.

*Wilkinson, Vosburg & Thompson by John A. Wilkinson; and Leroy Scott for plaintiff appellant.*

*Barden, Stith, McCotter & Sugg by James R. Sugg; Teague, Johnson, Patterson, Dilthey & Clay by I. Edward Johnson for defendant appellees.*

CAMPBELL, Judge.

[1] The record on appeal was not docketed within the time prescribed by the rules of this Court. However, rather than dismissing the appeal, we have elected to treat it as a petition for certiorari, allow it, and consider the appeal on its merits. *Insurance Co. v. Webb,* 10 N.C. App. 672, 179 S.E. 2d 803 (1971).

[2] Plaintiff's first assignment of error concerns exclusion of testimony by plaintiff and witness Broadway as to statements made by defendant, which, plaintiff argues, tend to show hostile feelings of the defendant toward the plaintiff. Ormond's testimony that one of the two men in the boat that hit him told him, "If you don't hush, I'll take this boat paddle and knock your damn head off" was excluded.

The evidence, however, was heard by the jury. On direct examination, defendant Crampton testified: "As for it being testified that I threatened to hit him with a boat paddle, I did not have a boat paddle. The boat Chum has never had a boat paddle in it and didn't then." On cross-examination, Crampton testified that he did tell Ormond to be quiet, but not in a gentle tone of voice, and he admitted that he did not remember exactly what he said.

Similarly, the following testimony of witness Broadway, in spite of objections, was ultimately admitted: That when Ormond was taken to the camp infirmary, Broadway followed along with him and was thrown against the wall by the defendant when he attempted to talk with Ormond and that witness Broadway had a clear view of the boat when it struck plaintiff, which testimony was included in the court's summary of the evidence.

The exclusion of evidence is harmless when subsequently evidence of the same import is admitted. *Branch v. Seitz,* 262 N.C. 727, 138 S.E. 2d 493 (1964). Even assuming it was error

to exclude this evidence, which it is not here necessary to determine, it is felt that the probative value of this evidence is so trivial that its exclusion could not have affected the result of the trial. A new trial will not be granted for mere technical error which could not have affected the result of the trial. *McLamb v. Construction Co.*, 10 N.C. App. 688, 179 S.E. 2d 895 (1971).

[3] Plaintiff next assigned as error the questions asked over objection, to impeach his witness. In addition to questions specifically concerning the witness's criminal convictions, the witness was asked, "In connection with the breaking and entering conviction on November 4, 1970, were you not sentenced to eighteen months active sentence by the Department of Correction?" The witness's answer was affirmative. The witness was also asked if he served the sentence, to which he replied affirmatively. These questions were objected to and assigned as error.

While plaintiff concedes that a witness may be asked specific questions concerning prior criminal convictions, it is urged that questions about the sentence imposed are improper, and that the witness may not be asked if he has served time in confinement.

A survey of the law on this point reveals that there is much confusion among very few cases. See Annot., 20 A.L.R. 2d 1421 (1950) ; 98 C.J.S., Witnesses, § 507. Although there is a difference of opinion as to whether punishment or term of service after conviction may be shown, it is generally improper to show imprisonment before or apart from conviction. It has been held, however, that for the purpose of affecting the credibility of the witness the State may show that he has been convicted of a particular crime and the punishment inflicted. But a witness may not be impeached merely by showing that he has been in jail; there must first be shown a conviction. *People v. Howard*, 150 Cal. App. 2d 428, 310 P. 2d 120 (1957) ; *Brown v. Commonwealth*, 357 S.W. 2d 681 (Ky. 1962) ; *White v. Commonwealth*, 312 Ky. 543, 228 S.W. 2d 426 (1950) ; *State v. Washington*, 383 S.W. 2d 518 (Mo. 1964) ; *Smith v. State*, 123 S.W. 2d 655 (Tex. 1939) ; *Lankford v. Tombari*, 35 Wash. 2d 412, 213 P. 2d 627 (1950). This rule applies as well to the accused as to an ordinary witness. *Nichols v. Commonwealth*, 283 S.W. 2d 184 (Ky. 1955).

In *U.S. v. Ramsey,* 315 F. 2d 199 (2d Cir.) *cert. denied,* 375 U.S. 883, 11 L.Ed. 2d 113, 84 S.Ct. 153 (1963), it was held that since it is proper to bring out on cross-examination the fact of prior criminal conviction it is equally proper to bring out how long a time was served on each conviction. The court felt that the length of sentence may often bear relation to the gravity of the offense, all of which has relevance to the witness's credibility.

In *State v. Cox,* 272 N.C. 140, 157 S.E. 2d 717 (1967), the court held that a question about a sentence upon conviction *may* have been error since *the sentence itself was unlawful* (banishment), although it was not held prejudicial in this case. The court did not consider whether such a question may not be asked under any circumstances.

The law in North Carolina is that it is permissible, for purposes of impeachment, to cross-examine a witness, including the defendant in a criminal case, by asking disparaging questions concerning collateral matters relating to his criminal and degrading conduct. Such questions relate to matters within the knowledge of the witness, not to accusations of any kind made by others. Generally the scope of such cross-examination is subject to the discretion of the trial judge, and the questions must be asked in good faith. *State v. Williams,* 279 N.C. 663, 185 S.E. 2d 174 (1971). Likewise, see *State v. Gainey,* 280 N.C. 366, 185 S.E. 2d 874 (1972).

We find no controlling authority in North Carolina on this point. In a *Per Curiam* opinion in *State v. McNair,* 272 N.C. 130, 157 S.E. 2d 660 (1967) we find: " . . . Ordinarily the *quantum* of punishment imposed upon conviction or a plea of guilty of another criminal offense is not admissible for purposes of impeachment. . . . " Despite the intimation contained in this case, we think the sentence imposed bears a relation to the gravity of the offense and has relevance to the credibility of the witness. We find no merit in this assignment of error.

[4] Plaintiff assigned as error the failure of the trial court to charge the jury on issues of negligence and intentional infliction of harm.

Rule 8(a)(1) requires that any pleading which sets forth a claim for relief shall contain (1) a short and plain statement of the claim sufficiently particular to give the court and the

parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved showing that the pleader is entitled to relief, and (2) a demand for judgment for the relief to which he deems himself entitled. North Carolina Illustrative Forms 3 and 4, Rule 84, illustrate the sufficient form of a complaint for negligence; they contain much more than the corresponding federal forms, by requiring the pleader to allege the specific acts which constitute the defendant's negligence. This North Carolina requirement was the result of compromise between the drafting committee and practicing lawyers on the General Statutes Commission who wanted more specificity, especially in automobile cases. 5 W.F. Intra. L. Rev. 1 (1969). See also North Carolina Rules of Civil Procedure, § 1A-1, Rule 8, Comment.—Section (a)3: "By specifically requiring a degree of particularity the Commission sought to put at rest any notion that the mere assertion of a grievance will be sufficient under these rules. . . . "

To plead that defendant was "negligent, malicious, reckless and improper for the reason that the defendant Crampton saw the plaintiff standing in said river and knew his whereabouts, yet intentionally and without any reason directed the said boat into, over and upon the plaintiff in the manner hereinabove alleged" is a conclusion on the part of the pleader which, although it alleges an intentional infliction of harm, fails to allege negligence and proximate cause.

The mere showing of an injury does not show negligence. An intentional infliction of harm is not a negligent act. If the operator of an automobile operates his car in violation of the speed law and in so doing inflicts injury as a proximate result, his liability is based on his negligent conduct. But if the driver intentionally runs over a person, it makes no difference whether the speed is excessive or not; the driver is guilty of an assault. Such wilful conduct is beyond and outside the realm of negligence. *Jenkins v. N. C. Department of Motor Vehicles*, 244 N.C. 560, 94 S.E. 2d 577 (1956).

[5]  Plaintiff's final assertion of error concerned the charge on the issue of assault. The first issue submitted was, "Did the defendant Donald R. Crampton assault the plaintiff Gary Kent Ormond as alleged in the complaint?" The court then instructed on the first issue that the jury must find that the defendant acted intentionally, and that he intentionally ran the motor

boat into the plaintiff. Plaintiff excepts to this instruction as being based on an issue of battery, while the tendered issue in the case was an assault.

An assault is an offer to show violence to another without striking him, and a battery is the carrying of the threat into effect by the infliction of the blow, it being without the consent of the person on whom the offer of violence was made or who actually received the blow. *Hayes v. Lancaster*, 200 N.C. 293, 156 S.E. 530 (1930).

Both torts have the requirement of intentional conduct on the part of the defendant. A battery is made out when the person of the plaintiff is offensively touched against his will; the tort of assault, however, does not require a touching, but requires that the plaintiff was in reasonable apprehension or fear of a battery as a result of the show of violence. An assault, then, has as an element the subjective state of mind of the plaintiff. If a battery has been committed—if the plaintiff has been personally injured—the plaintiff's fear of imminent harm is no longer an issue. The only question remaining is the intention and wilfulness of the defendant's conduct which brought about the injury.

The uncontroverted evidence presented by both plaintiff and defendant shows that Ormond suffered an injury—that he was struck by the boat driven by Crampton. The allegation in the complaint set out an intentional striking of the plaintiff, and plaintiff's evidence was clearly directed toward proof of that allegation. The court's charge adequately apprised the jury of its duty to find that the defendant acted intentionally in the series of events which led to plaintiff's injury.

In view of the finding that the case was properly submitted to the jury on proper instructions, it is not necessary to consider whether the court erred in its dismissal as to defendant YMCA or the instructions concerning evidence of permanent injuries for which damages could be assessed.

No error.

Judges BRITT and PARKER concur.