DEMETRIUS LYNN, Plaintiff-appellant v. STARNISHA BURNETTE and UNKNOWN DRIVER "JANE DOE" a/k/a NIKKI FRASIER, Defendant-appellees

No. COA98-1303

(Filed 20 June 2000)

**Negligence; Assault— accidental shooting—civil action in negligence**

The trial court erred by granting summary judgment in favor of defendant Burnette in an action which arose when defendant intended to shoot at plaintiff's tire but shot him in the neck and plaintiff filed a civil action for negligence rather than the intentional tort of battery. Under a line of cases including *Vernon v. Barrow*, 95 N.C. App. 642, plaintiff may sue in negligence and therefore rely upon the three-year statute of limitations for personal injury rather than the one-year period for battery.

Appeal by plaintiff from order entered 15 October 1997 by Judge F. Gordon Battle in Durham County Superior Court. Heard in the Court of Appeals originally on 10 June 1999 in an opinion filed 17 August 1999. Remanded to the Court of Appeals for reconsideration by order of the North Carolina Supreme Court on 7 February 2000.

LYNN v. BURNETTE

[138 N.C. App. 435 (2000)]

*Keith A. Bishop for plaintiff-appellant.*

*Teague, Rotenstreich & Stanaland, L.L.P., by Kenneth B. Rotenstreich and Ian J. Drake, for defendant-appellees.*

McGEE, Judge.

Defendant Starnisha Burnette and an individual known as Nikki Frasier followed Demetrius Lynn (plaintiff) and Dwayne Pratt to the Carolina-Duke Inn in Durham, North Carolina on 13 July 1993 and found plaintiff and Pratt in the company of two other women. Burnette and Pratt had been romantically involved, and Burnette went to plaintiff's motel room in search of Pratt. Later, as plaintiff and the two women were departing from the motel in an automobile, plaintiff saw Burnette and Frasier in a vehicle parked across the street at a gas station.

Plaintiff drove across the street to the gas station, parked, and walked over to the vehicle occupied by Burnette and Frasier. Plaintiff asked Burnette why she was following him. After plaintiff and Burnette spoke, plaintiff returned to his automobile. As he began to drive away, he was shot in the neck. In criminal court, Burnette pled guilty to assault with a deadly weapon inflicting serious injury.

Plaintiff filed an "application and order extending time to file complaint" on 12 July 1996. Plaintiff filed his complaint against defendants Burnette and Frasier on 1 August 1996 alleging that both were negligent. The complaint states that "[d]efendant Burnette owed a positive duty of care . . . to protect Plaintiff from injury when she discharged the hand gun at the tire of an automobile in which the Plaintiff was a driver." The complaint further alleges that "[d]efendant negligently caused the uncontrolled discharge of the hand gun[,]" and Frasier "facilitated the negligent discharge of the hand gun by either operating her automobile or permitting her automobile to be operated by [d]efendant Burnette while [d]efendant Burnette negligently discharged the hand gun." In defendant Burnette's answer, she "admit[s] that on or about July 13, 1993 the firearm discharged while aimed at a tire and plaintiff was hit by the bullet." Frasier did not file an answer. Plaintiff filed a motion for entry of default against Frasier, which was granted on 13 May 1997.

Defendant Burnette filed a motion to dismiss plaintiff's complaint. Following a hearing, the trial court entered an order dismissing claims against defendant Burnette with prejudice on 15 October 1997. The order stated the trial court treated the motion to dismiss as

a motion for summary judgment. The trial court determined there was no genuine issue as to any material fact regarding the claims against Burnette and granted summary judgment in favor of defendant Burnette. Plaintiff appealed. Burnette moved to dismiss plaintiff's appeal, which was granted by this Court in an order entered 31 July 1998. Plaintiff filed a petition for writ of certiorari with this Court on 20 August 1998, which was granted on 31 August 1998. In an opinion filed 17 August 1999, our Court dismissed plaintiff's appeal for plaintiff's failure to file written notice of appeal. In an order entered 7 February 2000, our Supreme Court remanded this matter to our Court for reconsideration in light of *In re Moore*, 306 N.C. 394, 293 S.E.2d 127 (1982), *cert. denied*, 459 U.S. 1139, 74 L. Ed. 2d 987 (1983).

In his brief, plaintiff argues only the third of his assignments of error and his remaining assignments of error are deemed abandoned and will not be reviewed. *See* N.C.R. App. P. 28(a) ("Assignments of error not set out in the appellant's brief, or in support of which no reason or argument is stated or authority cited, will be taken as abandoned."). Plaintiff's sole assignment of error argued in his brief is that the trial court erred in granting summary judgment in favor of defendant Burnette. Plaintiff failed to designate this assignment of error in his argument, in violation of our appellate rules. N.C.R. App. P. Appendix E ("Each question will be . . . followed by the assignments of error pertinent to the question, identified by their numbers and by the pages in the printed record on appeal or in the transcript at which they appear[.]"). Nevertheless, we will review the argument pursuant to N.C.R. App. P. 2.

In his brief, plaintiff argues "plaintiff [may] assert a negligence cause of action against a defendant when that defendant discharges a firearm and inflicts seriously disabling injuries" to the plaintiff. Plaintiff contends that "[d]efendant's conduct in firing the gun gave rise to actions for assault and battery and also for negligence." By contrast, defendant Burnette argues an "objective review of the evidence requires a holding that as a matter of law the only proper basis for this claim was one for the intentional tort of assault and battery," which must be brought within one year of the date of the assault and battery. Defendant Burnette then concludes that "plaintiff has failed to bring this action within the applicable statutory limitations period by wrongly bringing a negligence claim for acts constituting only an intentional tort."

Summary judgment is properly granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." N.C.R. Civ. P. 56(c); *Toole v. State Farm Mut. Auto. Ins. Co.*, 127 N.C. App. 291, 294, 488 S.E.2d 833, 835 (1997). At summary judgment all of the evidence is viewed in the light most favorable to the nonmoving party. *Coats v. Jones*, 63 N.C. App. 151, 154, 303 S.E.2d 655, 657 (1983), *aff'd*, 309 N.C. 815, 309 S.E.2d 253 (1983). The movant bears the burden of proving the absence of any genuine issue of material fact. *Holley v. Burroughs Wellcome Co.*, 318 N.C. 352, 355, 348 S.E.2d 772, 774 (1986).

We have reviewed the allegations in plaintiff's complaint and defendant Burnette's answer, along with the transcript of the arguments at the summary judgment hearing. The complaint alleges that defendant Burnette "negligently caused the uncontrolled discharge of the hand gun" and she "discharged the hand gun at the tire of an automobile in which the Plaintiff was a driver." Defendant Burnette's answer admits "the firearm discharged while aimed at a tire and plaintiff was hit by the bullet," but states the "alleged actionable negligence is again expressly denied." At the summary judgment hearing, defendant Burnette's attorney read Burnette's answer to a question asked by plaintiff's attorney during Burnette's deposition about how the shooting occurred. Defendant answered:

Well, I thought I was firing at the tire. That was my first time ever shooting a gun and the only way I can see how the bullet hit him was I did not have a direct aim at the tire because as I remember when I was putting the gun at—pointing—putting the gun out the window to shoot I was—I guess I was already pulling the trigger but I thought I was aiming the gun at the time.

Plaintiff still contends the question of defendant Burnette's intent is for the jury, which might conclude that she was negligent. Plaintiff argues that defendant Burnette "never intended to hurt anybody," and "[w]hat she did say is that she is sitting in the car and she puts her hand out and she fires at the same time." Therefore, "[w]e don't know what intent she possessed at that time and I would present to the Court that is a factual determination again for a jury." We disagree. The evidence before the trial court presented no genuine issue of material fact as to defendant Burnette's intentional act in that she had already testified in her deposition that her intent was to shoot plaintiff's tire. Rather, the evidence presented purely a question of law as to how Burnette's actions are characterized in tort. *See, e.g., Town of*

*Spencer v. Town of East Spencer*, 351 N.C. 124, 135, 522 S.E.2d 297, 305 (1999) ("The evidence before the trial court presented 'no genuine issue as to any material fact,' N.C.G.S. § 1A-1, Rule 56(c) (1990), but presented purely a question of law as to the validity of East Spencer's resolution of intent."). Our question is whether defendant Burnette's act, which the parties agree is an intentional tort, also gives rise to a claim of negligence, which is not barred by the one year statute of limitation.

Negligence is the breach of a legal duty proximately causing injury. *Tise v. Yates Construction Co.*, 345 N.C. 456, 460, 480 S.E.2d 677, 680 (1997). A breach may be caused by the performance of some positive act. *See Nourse v. Food Lion, Inc.*, 127 N.C. App. 235, 238 n.1, 488 S.E.2d 608, 611 n.1 (1997), *aff'd*, 347 N.C. 666, 496 S.E.2d 379 (1998) (active negligence denotes some positive act or some failure in duty of operation which is equivalent to a positive act). As defined by our Supreme Court, willful negligence is "the intentional failure to carry out some duty imposed by law or contract which is necessary to the safety of the person or property to which it is owed." *See Pleasant v. Johnson*, 312 N.C. 710, 714, 325 S.E.2d 244, 248 (1985). The duty that is intentionally breached has been defined as "an obligation, recognized by the law, requiring the person to conform to a certain standard of conduct, for the protection of others against unreasonable risks." *Daniels v. Reel*, 133 N.C. App. 1, 9, 515 S.E.2d 22, 27, *disc. review denied*, 350 N.C. 827, —— S.E.2d —— (1999). All "[a]ctionable negligence presupposes the existence of a legal relationship between parties by which the injured party is owed a duty by the other, and such duty must be imposed by law." *Id.* The law may impose that duty by statute, or else "generally by operation of law under application of the basic rule of the common law" which requires one to exercise due care when performing an undertaking and "not to endanger the person or property of others." *Id.*

By contrast, the intentional tort of battery is not premised on the existence of a duty between the parties. A battery occurs when the plaintiff is offensively touched against the plaintiff's will. *Ormond v. Crampton*, 16 N.C. App. 88, 94, 191 S.E.2d 405, 410, *cert. denied*, 282 N.C. 304, 192 S.E.2d 194 (1972). The issue in an action for battery is not the hostile intent of the defendant, but rather the absence of consent to contact on the part of the plaintiff. *McCracken v. Sloan*, 40 N.C. App. 214, 216-17, 252 S.E.2d 250, 252 (1979). Battery need not necessarily be perpetrated with malice, willfulness or wantonness. *Myrick v. Cooley*, 91 N.C. App. 209, 215, 371 S.E.2d 492, 496, *disc.*

*review denied*, 323 N.C. 477, 373 S.E.2d 865 (1988). Indeed, the intent required for battery may be supplied by grossly or culpably negligent conduct. *Jenkins v. Averett*, 424 F.2d 1228, 1231 (1970); *see also Pleasant*, 312 N.C. at 715, 325 S.E.2d at 248 ("Wanton and reckless negligence gives rise to [the requisite intent]"); *see also Jones v. Willamette Industries*, 120 N.C. App. 591, 594, 463 S.E.2d 294, 297 (1995), *disc. review denied*, 342 N.C. 656, 467 S.E.2d 714 (1996) (one's belief that certain consequences are substantially certain to follow from an action will also establish intent for battery). When intent to act is shown, the tortfeasor will be held liable for the results, even if they were not foreseen. *Andrews v. Peters*, 75 N.C. App. 252, 330 S.E.2d 638, *disc. review denied*, 315 N.C. 182, 337 S.E.2d 65 (1985), *aff'd*, 318 N.C. 133, 347 S.E.2d 409 (1986) (one who intends to touch a person only as a practical joke is liable for a dislocated kneecap suffered when plaintiff fell as a result of being touched on the back of the knee).

Negligence and intentional tort have been described as mutually exclusive theories of liability.

[N]egligence excludes the idea of intentional wrong[.] . . . [W]here an intention to inflict the injury exists, whether that intention is actual or constructive only, the wrongful act is not negligent but is one of violence or aggression[.]

65 C.J.S. Negligence § 3 (1966). In the context of assault, Professor Prosser has stated simply that "[t]here is, properly speaking, no such thing as a negligent assault." Prosser, The Law of Torts, ch.2, sec. 10 at 40-41 (4th ed. 1971). State supreme courts have ruled accordingly. *See, e.g., McLanahan v. St. Louis Public Service Co.*, 363 Mo. 500, 506, 251 S.W.2d 704, 708 (1952) ("[N]egligence is one kind of tort, an unintentional injury usually predicated upon failure to observe the prescribed standard of care . . . while a willful, wanton reckless act is another kind of tort, an intentional act often based upon an act done in utter disregard of the consequences."); *Bazley v. Tortorich*, 397 So.2d 475 (La. 1981) (discussing a "well established division between intentional torts and negligence in common law" and noting a "definite tendency to impose greater responsibility upon a defendant whose conduct has been intended to do harm, or morally wrong"); *see also generally Fulmer v. Rider*, 635 S.W.2d 875 (Tx. App. 1982) (analyzing case law in various jurisdictions, including North Carolina, and concluding that evidence of an intentional tort is distinct from negligence, and a plaintiff may not "waive" the intentional injury and elect to sue in negligence instead).

Our North Carolina Supreme Court has also acknowledged that an intentional tort and willful negligence are discrete concepts. "[A]n intentional act of violence is not a negligent act." *Jenkins v. Department of Motor Vehicles*, 244 N.C. 560, 563, 94 S.E.2d 577, 580 (1956). "Such [] conduct is beyond and outside the realm of negligence." *Id.* Indeed, negligence "cease[s] to play a part" in the analysis where the injury is intentional, and such intent to injure may be actual or constructive. *See Pleasant*, 312 N.C. at 714-15, 325 S.E.2d at 248 (citing *Foster v. Hyman*, 197 N.C. 189, 148 S.E. 36 (1929)). Constructive intent to injure, which may provide the mental state necessary for an intentional tort, "exists where conduct threatens the safety of others and is so reckless or manifestly indifferent to the consequences that a finding of willfulness and wantonness equivalent in spirit to actual intent is justified." *Id.* Our Court has echoed this distinction:

> [Our Supreme Court has discussed] the subtle distinction which must be drawn between willful negligence and an intentional tort. Willful negligence arises from the tort-feasor's willful breach of a duty arising by operation of law. The tort-feasor must have a deliberate purpose not to discharge a legal duty necessary to the safety of the person or property of another. This willful and deliberate purpose not to discharge a duty differs crucially for our purposes from the willful and deliberate purpose to inflict injury— the latter amounting to an intentional tort.

*Siders v. Gibbs*, 39 N.C. App. 183, 186-87, 249 S.E.2d 858, 860 (1978) (citations omitted).

Applying these rules to this case could lead to a determination, as argued by defendant, that the firing of a handgun in the direction of an automobile and its driver is a violent act which cannot be negligence under *Jenkins*. Also, that it is reckless conduct threatening safety, constituting constructive intent to injure and resulting in a battery, removes the act from a negligence analysis according to *Pleasant*. Finally, the duty required for a finding of negligence, as discussed in *Siders*, was arguably absent in this case in that there was no legal relationship between the two parties, and defendant Burnette did not injure plaintiff through the careless execution of any certain undertaking. *See Daniels*, 133 N.C. App. at 9, 515 S.E.2d at 27.

A conflicting line of cases has emerged in North Carolina. In *Vernon v. Barrow*, 95 N.C. App. 642, 383 S.E.2d 441 (1989), when the defendant entered a lounge owned by him to collect rent, he noticed

the plaintiff standing at the bar and demanded that the plaintiff leave the property immediately. Defendant left the lounge and later returned. He again asked the plaintiff to leave. When the plaintiff refused, the defendant drew a gun and fired several shots into the floor of the lounge near the plaintiff's feet, one of which ricocheted into the plaintiff's leg. Our Court held that the "defendant's conduct in firing the gun gave rise to actions for assault and battery and also for negligence." *Vernon*, 95 N.C. App. at 643, 383 S.E.2d at 442. We quoted a sentence from *Lail v. Woods*, 36 N.C. App. 590, 592, 244 S.E.2d 500, 502, *disc. review denied*, 295 N.C. 550, 248 S.E.2d 727 (1978) stating that "there are situations where the evidence presented raises questions of both assault and battery and negligence." *Id.* (referring to the holding in *Williams v. Dowdy*, 248 N.C. 683, 104 S.E.2d 884 (1958)).

Our Court in *Lail*, however, reached the opposite result. In *Lail*, several children threw rocks at each other after an earlier altercation. The defendant threw a rock at one of the children, and although he did not mean to hit that child, the defendant "intended to participate in the rock fight, an intentional act of violence." Our Court then explained that this act did not support a theory of negligence. *Lail*, 36 N.C. App. at 591, 244 S.E.2d at 501-02. In our Court's analysis, we distinguished the case of *Williams v. Dowdy*, in which there was evidence that the defendant employer had fired his gun into a group of workers, competing with other evidence that the defendant had fired a warning shot into the ground before him which ricocheted into someone in the group. We noted that it was the conflicting evidence in *Dowdy* that prompted our Supreme Court to allow instructions on both intentional tort and negligence theories. *Lail*, 36 N.C. at 591, 244 S.E.2d at 502.

Our Court cited *Vernon* and *Lail* in our more recent case of *Key v. Burchette*, 134 N.C. App. 369, 517 S.E.2d 667, *disc. review denied*, 351 N.C. 106, —— S.E.2d —— (1999). In *Key*, the defendant purchased cocaine from the plaintiff twice in one day when the defendant and his wife were arguing. Defendant returned home around 11:00 p.m. after his second cocaine purchase and noticed his wife had been drinking. The plaintiff then arrived at the defendant's house, and while all three were in the kitchen, defendant's wife picked up a pistol from the counter, pointed it toward the floor, and fired it. The bullet struck the plaintiff in the leg. *Key*, 134 N.C. App. at 369, 517 S.E.2d at 668. In depositions, both defendant and his wife testified that the shooting was accidental. The plaintiff asserted, in an affidavit filed in a prior action involving an insurance company claim, that he did not

believe the shooting had been intentional. The plaintiff sued in negligence as the one-year statute of limitations for a battery claim had expired. Our Court held the action was not barred because there was a question of whether defendants were negligent. *Id.* at 372, 517 S.E.2d at 669.

In the case before us, viewing the evidence in the light most favorable to plaintiff, *see Coats*, 63 N.C. App. at 154, 303 S.E.2d at 657, defendant Burnette intended to shoot at the tire on plaintiff's vehicle but pulled the trigger before she had properly aimed, causing the bullet to strike plaintiff, similar to *Vernon* and *Key*, and as argued in *Dowdy*. Although *Dowdy* is distinguishable where the parties disagreed upon the facts of that case, *Vernon* and *Key* allow plaintiff in this case to sue defendant in negligence.

Thus, plaintiff may rely upon the three-year statute of limitations for personal injury. *See* N.C. Gen. Stat. § 1-52 (16) (1999). The trial court's summary judgment in favor of defendant Burnette is reversed and the case is remanded for trial.

Reversed and remanded.

Judges WALKER and EDMUNDS concur.