BARRY E. ALFORD, ET AL., PLAINTIFFS V. CATALYTICA PHARMACEUTICALS, INC. AND EASTERN OMNI CONSTRUCTORS, DEFENDANTS

No. COA01-959

(Filed 4 June 2002)

**1. Appeal and Error— appealability—interlocutory order— certification for immediate appeal**

Although plaintiffs' appeal from the trial court's grant of defendant's motion to dismiss plaintiffs' *Woodson* claim is an appeal from an interlocutory order since there were further issues remaining for final determination, the appeal will be heard because the trial court certified the order as a final judgment and stated there was no just reason for delay with respect to the claim dismissed.

**2. Employer and Employee— *Woodson* claim—motion to dismiss—one-year statute of limitations**

The trial court did not err by granting defendant employer's motion to dismiss plaintiff employees' *Woodson* claim based on the trial court's conclusion that plaintiffs' claim was barred by the one-year statute of limitations under N.C.G.S. § 1-54(3), because plaintiffs' *Woodson* claim is equivalent to an intentional tort.

Judge THOMAS dissenting.

Appeal by plaintiffs from order entered 22 February 2001 by Judge Howard E. Manning, Jr. in Wake County Superior Court. Heard in the Court of Appeals 25 April 2002.

ALFORD v. CATALYTICA PHARMS., INC.

[150 N.C. App. 489 (2002)]

*Resnick & Abraham, LLC, by Perry J. Pelaez, and Laura S. Jenkins, P.C., by Laura S. Jenkins, for plaintiffs-appellants.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P., by Mark A. Ash and J. Mitchell Armbruster, for defendants-appellees.*

TYSON, Judge.

## I. Facts

Plaintiffs were employees of Catalytica Pharmaceuticals, Inc. ("defendant"). Defendant contracted with Eastern Omni Constructors ("Eastern Omni") to construct and install a new bulk bromine storage/handling system and components for bromine transfer.

On 15 August 1999, there was a rupture of a component part to the storage tank which caused the release of liquid bromine and bromine gas. Human exposure to bromine can cause death if ingested or inhaled and serious injury if it comes in contact with the skin. Plaintiffs were injured after coming into contact with the bromine liquid or bromine gas.

Plaintiffs filed a complaint against defendant and Eastern Omni on 5 September 2000, alleging: (1) inherently dangerous activity, (2) intentional infliction of emotional distress, (3) assault, (4) battery, and (5) negligence. Defendant filed a motion to dismiss the complaint pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. Eastern Omni also moved to dismiss the claim for intentional infliction of emotional distress only, pursuant to Rule 12(b)(6).

On 18 January 2001, plaintiffs filed an amended complaint alleging three causes of action: (1) a *Woodson* claim, (2) intentional infliction of emotional distress, and (3) negligence. A hearing on all the parties' motions was held on 8 February 2001. The trial court: (1) granted plaintiffs' motion to amend their complaint, withdrawing the claims for assault, battery, and inherently dangerous activity; (2) granted defendant's motion to dismiss plaintiffs' *Woodson* claim as barred by the one-year statute of limitations in N.C.G.S. § 1-54; and (3) denied both defendant's and Eastern Omni's motions to dismiss as to plaintiffs' claim for intentional infliction of emotional distress. The trial court certified that portion of the order dismissing plaintiffs' *Woodson* claim for immediate appeal pursuant to Rule 54(b) of the North Carolina Rules of Civil Procedure. Plaintiffs appeal. We affirm.

ALFORD v. CATALYTICA PHARMS., INC.

[150 N.C. App. 489 (2002)]

## II. Issues

The sole issue presented is whether plaintiffs' claim pursuant to *Woodson v. Rowland*, 329 N.C. 330, 407 S.E.2d 222 (1991), is barred by the one-year statute of limitations in N.C.G.S. § 1-54(3).

**[1]** This appeal is interlocutory in nature. An order is interlocutory if entered during the pendency of an action and does not dispose of the case but requires further action by the trial court to finally determine the rights of all the parties involved in the controversy. *See Veazey v. Durham*, 231 N.C. 357, 361-62, 57 S.E.2d 377, 381 (1950). Generally, there is no right to appeal from an interlocutory order. *See* N.C. Gen. Stat. § 1A-1, Rule 54(b) (2001); *Veazey*, 231 N.C. at 362, 57 S.E.2d at 381. However, a party may appeal an interlocutory order when there has been a final determination as to one or more of the claims, and the trial court certifies that there is no just reason to delay the appeal pursuant to Rule 54(b) of the North Carolina Rules of Civil Procedure. *See Liggett Group v. Sunas*, 113 N.C. App. 19, 23, 437 S.E.2d 674, 677 (1993).

In this case, the trial court granted defendant's motion to dismiss plaintiffs' *Woodson* claim, and denied defendant's motion and Eastern Omni's motion to dismiss plaintiffs' claim for intentional infliction of emotional distress. The trial court stated that "there is no just reason for delay with respect to the claim dismissed" and certified the order "as a final judgment." The trial court's order dismissing plaintiffs' *Woodson* claim is a final judgment as to that claim. We may review this issue on appeal, notwithstanding that further issues remain at the trial court for final determination.

**[2]** The essential question on a motion under Rule 12(b)(6) "is whether the complaint, when liberally construed, states a claim upon which relief can be granted on *any* theory." *Barnaby v. Boardman*, 70 N.C. App. 299, 302, 318 S.E.2d 907, 909 (1984), *rev'd on other grounds*, 313 N.C. 565, 330 S.E.2d 600 (1985) (emphasis in original). When the complaint fails to allege the substantive elements of some legally cognizable claim, or where it alleges facts which defeat any claim, the complaint must be dismissed. *See Hudson-Cole Dev. Corp. v. Beemer*, 132 N.C. App. 341, 345-46, 511 S.E.2d 309, 312 (1999). We decide whether plaintiffs' *Woodson* claim was properly dismissed as barred by the statute of limitations.

If a *Woodson* claim is considered to be an intentional tort, it is governed by the one-year statute of limitations pursuant to N.C.G.S.

§ 1-54(3) (1999) and dismissal was appropriate. On the other hand, if a *Woodson* claim is not an intentional tort, it is governed by the three-year statute of limitations pursuant to N.C.G.S. § 1-52(5) (1999) and dismissal was improperly granted. We hold that a claim pursuant to *Woodson* is governed by the one-year statute of limitations in N.C.G.S. § 1-54(3).

Our Supreme Court in *Woodson* held that "when an employer intentionally engages in misconduct knowing it is substantially certain to cause serious injury or death to employees and an employee is injured or killed by that misconduct, that employee, or the personal representative of the estate in case of death, may pursue a civil action against the employer. Such misconduct is tantamount to an intentional tort, and civil actions based thereon are not barred by the exclusivity provisions of the [Workers' Compensation] Act." *Woodson*, 329 N.C. at 340-41, 407 S.E.2d at 228. The Court acknowledged that the Workers' Compensation Act ("Act") seeks to balance the competing interests between employers and their employees and implements trade-offs by: (1) providing an injured employee certain and sure recovery without having to prove negligence or face affirmative defenses, and also (2) limiting the recovery available for compensable injuries and removing the employee's right to pursue potentially larger damages awards in civil actions against the employer. *Id.* at 338, 407 S.E.2d at 227 (citing *Pleasant v. Johnson*, 312 N.C. 710, 712, 325 S.E.2d 244, 246-47 (1985)).

Our Supreme Court distinctly noted that in *Pleasant* the doctrine of "constructive intent" has been applied to willful and wanton conduct. *Id.* at 342, 407 S.E.2d at 229. "Constructive intent to injure may provide the mental state necessary for an intentional tort." *Pleasant*, 312 N.C. at 715, 325 S.E.2d at 248. While willful and wanton misconduct is sufficient for holding a co-employee civilly liable, civil actions against employers require more aggravated conduct than willful and wanton in "keeping with the statutory workers' compensation trade-offs." *Woodson*, 329 N.C. at 342, 407 S.E.2d at 229. Substantial certainty is a higher threshold which "serv[es] as a deterrent to intentional wrongdoing and promoting safety in the workplace." *Id.*

In adopting the substantial certainty standard, our Supreme Court cited cases from Louisiana, Michigan, Ohio, and South Dakota. *Id.* at 342-43, 407 S.E.2d at 229-30. We turn to these jurisdictions for their treatment of such claims.

**ALFORD v. CATALYTICA PHARMS., INC.**

[150 N.C. App. 489 (2002)]

The workers' compensation statutes in Ohio provides that an action for an employment intentional tort shall be brought within one year of the date on which the employee knew or through exercise of reasonable diligence should have known of the injury, condition or disease. *See Christian v. The Scotts Co.*, 710 N.E.2d 1182, 1184 (Ohio App. 1998) (citing R.C. 2305.112(A)). South Dakota has held that "[w]orker's [sic] compensation is the exclusive remedy for all on-the-job injuries to workers except those injuries intentionally inflicted by the employer. Under the intentional tort exception, workers may bring suit against their employers at common law only 'when an ordinary, reasonable, prudent person would believe an injury was *substantially certain* to result from [the employer's] conduct.' " *Jensen v. Sport Bowl, Inc.*, 469 N.W.2d 370, 371 (S.D. 1991) (citing *VerBouwens v. Hamm Wood Products*, 334 N.W.2d 874, 876 (S.D. 1983) (emphasis in original)).

The legislature in Michigan has by statute rejected the "substantially certain" test announced in *Beauchamp v. Dow Chemical Co.*, 398 N.W.2d 882 (1986), and adopted a more rigorous "true intentional tort" standard as the proper test for determining the presence of an intentional tort to overcome the exclusivity of their workers' compensation provisions. *See Gray v. Morley*, 596 N.W.2d 922, 924 (Mich. 1999). The Louisiana Supreme Court has held that "intentional act" as used in their statute means the same as intentional tort, stating that "intent" means that the person either: " '(1) consciously desires the physical result of his act, whatever the likelihood of that result happening from his conduct; or (2) knows that that result is substantially certain to follow from his conduct, whatever his desire may be as to that result.' " *McCool v. Beauregard Memorial Hosp.*, —— So.2d ——, —— (La. App. Apr. 3, 2002) (No. 01-1679) (quoting *Bazley v. Tortorich*, 397 So.2d 475, 481 (La. 1981)).

The courts and legislatures of those jurisdictions followed by our Supreme Court in *Woodson*, consider such claims to be equivalent to an intentional tort and within the intentional tort exception to the exclusivity of the Workers' Compensation Act.

Plaintiffs argue that our Supreme Court "clarified that a claim under *Woodson* was not an intentional tort" in *Owens v. W.K. Deal Printing, Inc.*, 339 N.C. 603, 453 S.E.2d 160 (1995). In *Owens,* our Supreme Court reversed *per curiam* the decision of this Court for the reasons stated in the dissenting opinion. The Court added that "[t]o the extent that it may be read as implying that actions authorized

under [*Woodson*], seek recovery for 'intentional torts' *in the true sense of that term*, we do not accept the reasoning of [the] dissent. We reemphasize that plaintiffs in *Woodson* actions need only establish that the employer intentionally engaged in misconduct and that the employer knew that such misconduct was 'substantially certain' to cause serious injury or death, and thus, the conduct was 'so egregious as to be tantamount to an intentional tort.' " *Id.* at 604, 453 S.E.2d at 161 (emphasis supplied). We find this statement to be qualified by the language "in the true sense of that term."

Plaintiffs argue, and the dissent asserts, that "substantial certainty" originates in negligence. Our courts have acknowledged that certain behavior grounded in negligence is tantamount to an intentional tort, and have implicitly treated such conduct as intentional torts. *E.g.*, *Hinson v. Dawson*, 244 N.C. 23, 92 S.E.2d 393 (1956) (malicious conduct, wanton conduct, or a degree of negligence which indicates a reckless indifference to consequences will support punitive damages); *see also State v. Snyder*, 311 N.C. 391, 317 S.E.2d 394 (1984) (wanton and reckless conduct will supply malice for second-degree murder).

An intentional tort requires an actual or constructive intent to harm. *Lynn v. Burnette*, 138 N.C. App. 435, 440, 531 S.E.2d 275, 279 (2000) (citing 65 C.J.S. Negligence § 3 (1966)). The intentional tort of battery occurs "when the plaintiff is offensively touched against the plaintiff's will." *Id.* at 439, 531 S.E.2d at 279 (citing *Ormond v. Crampton*, 16 N.C. App. 88, 94, 191 S.E.2d 405, 410, *cert. denied*, 282 N.C. 304, 192 S.E.2d 194 (1972)). Battery does not require malice, willfulness or wantonness. *Id.* at 439-40, 531 S.E.2d at 279 (citing *Myrick v. Cooley*, 91 N.C. App. 209, 215, 371 S.E.2d 492, 496, *disc. review denied*, 323 N.C. 477, 373 S.E.2d 865 (1988)). The intent required for battery may be established by grossly or culpably negligent conduct, *see Jenkins v. Averett*, 424 F.2d 1228, 1231 (1970), wanton and reckless negligence, *see Pleasant*, 312 N.C. at 715, 325 S.E.2d at 248, as well as one's *belief that certain consequences are substantially certain to follow from an action*, *see Jones v. Willamette Industries*, 120 N.C. App. 591, 594, 463 S.E.2d 294, 297 (1995) (emphasis supplied).

Our Supreme Court has repeatedly held that a successful *Woodson* claim does not require actual certainty but substantial certainty. *See Rose v. Isenhour Brick & Tile Co., Inc.*, 344 N.C. 153, 159, 472 S.E.2d 774, 778 (1996); *Mickles v. Duke Power Co.*, 342 N.C. 103,

110, 463 S.E.2d 206, 211 (1995); *see also Regan v. Amerimark Bldg. Products, Inc.*, 127 N.C. App. 225, 227, 489 S.E.2d 421, 423 (1997). We conclude that the additional language in *Owens* was to qualify the dissent's use of "intentional tort" and does not classify a *Woodson* claim as an additional cause of action separate and apart from an intentional tort.

Both parties point out that the North Carolina General Assembly has extended the statute of limitations for intentional torts. *See* N.C. Session Laws 2001-175. However, the statute in effect at the time plaintiffs' alleged *Woodson* claim arose subjects the claim to the one-year statute of limitations.

We reject plaintiffs' argument that "the expression of one thing is the exclusion of another," and conclude that section 1-54(3) applies to all actions substantially similar to those enumerated constituting intentional torts. We hold that plaintiffs' *Woodson* claim is equivalent to an intentional tort and we affirm the trial court's dismissal of this claim as time-barred by N.C.G.S. § 1-54(3).

Affirmed.

Judge MARTIN concurs.

Judge THOMAS dissents.

THOMAS, Judge, dissenting.

Because our courts have not consistently held that an action forming the basis of a *Woodson* claim is an intentional tort "in the true sense of that term," I respectfully dissent.

The one-year statute of limitations as prescribed in N.C. Gen. Stat. § 1-54(3) (1999) is inapplicable even if a *Woodson* claim is 99.9% an intentional tort. The standard is not flexible under any circumstances—it must be an intentional tort in every sense of the word, absolutely, or there is no room in that section for *Woodson*.

Statutes of limitation are inflexible and unyielding and the trial court has no discretion when considering whether a claim is barred by the applicable statute of limitations. *Congleton v. City of Asheboro*, 8 N.C. App. 571, 174 S.E.2d 870 (1970).

In *Woodson v. Rowland*, 329 N.C. 330, 407 S.E.2d 222 (1991), our Supreme Court held there is an exception to the exclusivity clause of

the North Carolina Workers' Compensation Act where an employer had knowledge that an injury was substantially certain to occur under the circumstances. The *Woodson* court allowed a separate civil action, stating:

> the legislature did not intend to relieve employers of civil liability for intentional torts which result in injury or death to employees. In such cases the injury or death is considered to be both by accident, for which the employee or personal representative may pursue a compensation claim under the Act, and the result of an intentional tort, for which a civil action against the employer may be maintained.

*Id.* at 338-39, 407 S.E.2d at 227. The *Woodson* court held that

> when an employer intentionally engages in misconduct knowing it is substantially certain to cause serious injury or death to employees and an employee is seriously injured or killed by that misconduct, . . . [s]uch misconduct is *tantamount* to an intentional tort, and civil actions based thereon are not barred by the exclusivity provisions of the Act.

*Id.* at 340-41, 407 S.E.2d at 228. (Emphasis added). *See also* Daye & Morris, *North Carolina Law of Torts* § 2.31, at 6 & n.10 (2d ed. 1999).

However, in *Owens v. W.K. Deal Printing, Inc.*, 339 N.C. 603, 453 S.E.2d 160 (1995), our Supreme Court explained that a *Woodson* claim is not an intentional tort "in the true sense of that term." *Id.* at 604, 453 S.E.2d at 161. In *Pendergrass v. Card Care, Inc.*, 333 N.C. 233, 424 S.E.2d 391 (1993), our Supreme Court stated that a *Woodson* claim involved a "higher degree of reckless *negligence* than willful, wanton and reckless negligence[,]" but did not say the claim involved an intentional tort. *Id.* at 240, 424 S.E.2d at 395. (Emphasis added).

This evolving characterization ranging from an "intentional tort," to "tantamount to an intentional tort," to an extremely high level of "negligence," to not an intentional tort "in the true sense of that term," clearly removes *Woodson* from the necessarily seamless definition needed for inclusion in section 1-54(3). The "substantial certainty" test set forth in *Woodson* is one of the tests utilized in establishing intent for an intentional tort, yet its description appears to originate in negligence theory.

There is in fact a continuum of tortious conduct, with actual intent on one end and mere recklessness and negligence on the other.

*See Woodson,* 329 N.C. at 341, 407 S.E.2d at 228-29; Logan & Logan, *North Carolina Torts* § 17.20 (1996). It is generally clear where substantial certainty is on that continuum. However, it is unclear precisely where a *Woodson* claim is on the continuum and how it should be procedurally treated.

In *Dickens v. Puryear,* 302 N.C. 437, 276 S.E.2d 325 (1981), our Supreme Court held that because no statute of limitations addressed the tort of intentional infliction of emotional distress, the general three-year statute of limitations pursuant to section 1-52(5) must govern. There is no specific limitation set forth in our General Statutes for a *Woodson* claim. Unlike Michigan, as cited in the majority opinion, our General Assembly has not acted to establish the statute of limitations at one year and has not adopted what the majority refers to as a "more rigorous true intentional tort test." If that "true intentional tort test" is indeed "more rigorous," then by the majority's own description section 1-54(3) is not applicable. Therefore, this claim, as with intentional infliction of emotional distress, must be controlled by the catch-all three-year statute of limitations in section 1-52(5). *See also Smith v. Cessna Aircraft Co., Inc.,* 571 F.Supp. 433 (M.D.N.C. 1983) (holding that absent other specific limitation, N.C. Gen. Stat. § 1-52(5) is applicable).

For these reasons, I respectfully dissent and vote to reverse the trial court's grant of summary judgment.