NORTH CAROLINA NATIONAL BANK, A NATIONAL BANKING ASSOCIATION v. C. DAVID McKEE, B. G. MARTIN AND ADRIAN A. ROBERTS, II

No. 8222SC575

(Filed 5 July 1983)

1. **Rules of Civil Procedure § 55— appearance by defendants—no authority in clerk to enter default judgment**

    The clerk's entries of default and default judgment against defendants were void where defendants had appeared in the action through settlement negotiations with plaintiff after the action was instituted. G.S. 1A-1, Rule 55(b)(1).

2. **Rules of Civil Procedure § 55— trial court's refusal to enter default judgment—no abuse of discretion**

    The trial court did not abuse its discretion in refusing to enter a default and default judgment against defendants where the court found that defendants showed excusable neglect in that defendants had furnished their attorney information sufficient to file answer and were unaware that the attorney had failed to do so, and the court also found that defendants' proposed answer pleaded a meritorious defense of accord and satisfaction.

3. **Bills and Notes § 15; Uniform Commercial Code § 32— acceptance of replacement note not payment of original note**

 Plaintiff bank's acceptance of a corporation's promissory note as a replacement for a note executed by the individual defendants did not constitute "payment and satisfaction" of defendants' note within the meaning of G.S. 25-3-603 so as to discharge defendants from liability for the debt where the evidence showed that plaintiff agreed to accept the corporation's note only on condition that plaintiff retain possession of defendants' note as additional collateral for the corporation's note.

4. **Attorneys at Law § 7.4— attorney fees—provisions of note and assumption agreement**

 A corporation's promissory note providing for the collection of attorney fees if the debt were collected through an attorney and an assumption agreement signed by defendants providing that nothing therein impaired "other remedies provided for under the terms of the note and security agreement provided by law for collection of the debt" placed on defendants liability for attorney fees incurred by plaintiff in an action on the note.

APPEAL by defendants from *Collier, Judge.* Judgment entered 10 March 1982 in Superior Court, IREDELL County. Heard in the Court of Appeals 19 April 1983.

The complaint filed by North Carolina National Bank on 1 October 1981 presented two claims against defendants. The first claim originated from a promissory note in the amount of $61,000.00, executed on 22 September 1978 by Harmon's Food Store, Inc., and delivered to plaintiff. This note was amended by agreement of both parties on 1 April 1981 to extend the final maturity date beyond the date stated in the original note. On 2 April 1981 defendants, by written assumption agreement, personally assumed the then outstanding liability of Harmon's Food Store, Inc. on the 22 September 1978 note. No payment was made on the note after 10 August 1981, leaving a principal balance outstanding of $7,424.69.

The second claim originated from a promissory note in the amount of $50,000.00, executed by defendants on 21 April 1981 and delivered to plaintiff. On 29 July 1981 defendants requested that plaintiff accept a secured note executed by Mid-American Franchise Services, Inc., with its assets constituting the collateral, as a replacement for the 21 April 1981 promissory note under which defendants were personally liable in the event of a default. Plaintiff accepted the secured Mid-American note, but retained possession of the original (21 April 1981) promissory note

as "additional collateral" for the 29 July 1981 Mid-American note. Upon the alleged default of defendants on the 29 July 1981 Mid-American note, plaintiff filed suit requesting attorneys fees and payment of the principal and interest due under the terms of the 2 April 1981 and the 29 July 1981 notes.

During October defendants attempted to negotiate a settlement with plaintiff. On 22 October 1981 defendants were granted an extension of time within which to file responsive pleadings. When defendants failed to answer within the time allowed, a default and default judgment were entered against them by the Clerk of Superior Court. Based upon defendants' motion and affidavits, the trial court set aside entry of default and granted relief from the default judgment on 1 February 1982.

On 2 February 1982 plaintiff moved for summary judgment, which motion was granted on 10 March 1982. Defendants appealed and plaintiff cross-appealed.

*Raymer, Lewis, Eisele & Patterson by Douglas G. Eisele, for plaintiff-appellee.*

*House, Blanco & Osborn by Reginald F. Combs, for defendant-appellants.*

EAGLES, Judge.

On 18 December 1981, subsequent to the entry of default and default judgment against defendants on 15 December 1981, defendants filed an answer and a motion to set aside the entry of default and default judgment. On 26 January 1982 plaintiff filed a motion for entry of default and default judgment under G.S. 1A-1, Rule 55(b)(2), North Carolina Rules of Civil Procedure. An order setting aside the default and default judgment was entered 1 February 1982. Having outlined the sequence of events leading up to the trial court's order of 1 February 1982, we must first address plaintiff's cross-assignment of error that the trial court erred in setting aside the default and the default judgment entered against defendants on 15 December 1981 by the Clerk of Superior Court.

[1] Under G.S. 1A-1, Rule 55(b)(1) the clerk can enter a default judgment against a defendant only if the defendant has failed to appear in the matter. *Roland v. W & L Motor Lines, Inc.*, 32 N.C.

App. 288, 231 S.E. 2d 685 (1977). In the case *sub judice* defendants had made an appearance through their settlement negotiations with plaintiff. *Webb v. James,* 46 N.C. App. 551, 265 S.E. 2d 642 (1980); *Taylor v. Triangle Porsche-Audi, Inc.,* 27 N.C. App. 711, 220 S.E. 2d 806 (1975). Plaintiff acknowledged that defendants had appeared in the action prior to the clerk's entry of default and default judgment when plaintiff filed a motion for entry of default and default judgment under Rule 55(b)(2) on 26 January 1982. Since defendants had appeared in the matter prior to the clerk's action, the clerk's entry of default and default judgment were void. *Roland v. W & L Motor Lines, Inc., supra.*

[2] While the clerk's prior entry of default and default judgment of 15 December 1981 were void because of defendants' prior appearance, the trial court, under G.S. 1A-1, Rule 55(b)(2), could have still entered a default and default judgment against defendants under plaintiff's 26 January 1982 motion. *Roland v. W & L Motor Lines, Inc., supra.* Such a motion is addressed to the discretion of the court. *See North American Acceptance Corp. v. Samuels,* 11 N.C. App. 504, 181 S.E. 2d 794 (1971). In exercising its discretion the trial court should be guided by the consideration that default judgments are disfavored by the law. *Bailey v. Gooding,* 45 N.C. App. 335, 263 S.E. 2d 634 (1980).

Entry of default and judgment by default would be improper where defendants showed 1) excusable neglect in failing to timely file a responsive pleading and 2) a meritorious defense to plaintiff's claim. *See* G.S. 1A-1, Rule 60(b)(1), North Carolina Rules of Civil Procedure. We find no abuse of discretion on the part of the trial court in finding that defendants had shown both excusable neglect and a meritorious defense.

Defendants' attorney submitted an affidavit which stated

4. Through mistake and inadvertence, I failed to file an Answer on behalf of the Defendants C. David McKee and B. G. Martin within the time permitted by the Order of October 28, 1981. I also failed to advise Defendants C. David McKee and B. G. Martin that I had not filed an Answer by December 7, 1981.

. . .

6. As the Defendants' attorney of record, I am responsible for the failure to file the Answer within the period prescribed by the North Carolina Rules of Civil Procedure and permitted by Order of the Assistant Clerk of Superior Court of Iredell County. That failure is not fairly inputable [sic] to the Defendants C. David McKee or B. G. Martin, having been occasioned solely by the neglect of counsel.

Both defendants submitted affidavits which stated

2. I was not aware that my attorney in this action, Reginald F. Combs of the law firm of House, Blanco, Randolph & Osborn, P.A. had not filed an Answer to the Complaint within the time permitted until I was served with a copy of the Entry of Default and Default Judgment entered December 15, 1981. After providing my attorneys with information sufficient to file the Answer, I have relied upon them to handle this case.

Defendants' answer contained the allegation that

On or about July 29, 1981, the Plaintiff accepted a note in the principal amount of $50,000.00, made by Mid-American Franchise Services, Inc., a Tennessee Corporation domesticated and authorized to do business in the State of North Carolina, a true copy of which is attached hereto as Exhibit A, in complete accord and satisfaction and in full payment of Defendants' obligations to the Plaintiff.

These affidavits support the trial court's findings of fact that

5. Due to the inadvertence and neglect of counsel for Defendants Martin and McKee, Reginald F. Combs, no answer or other pleading was filed on behalf of the Defendants Martin or McKee by December 7, 1981.

. . .

9. A proposed Answer to Plaintiff's Complaint was attached to Plaintiff's Motion and proffered for filing. Without determining the merits of the defenses asserted therein, the Answer *pleads* a meritorious defense to the claims of the Plaintiff, to wit: the affirmative defenses of accord and satisfaction and payment.

On the basis of the above competent evidence and findings of fact, we find no abuse of discretion in the trial court's refusal to allow an entry of default and default judgment against defendants.

[3] After granting defendants' motion to set aside the entry of default and judgment by default on 1 February 1982, and at the conclusion of all the evidence presented at a hearing on 5 February 1982, the trial court entered summary judgment for plaintiff on both claims. Prior to that time defendants conceded that they had no legal defense as to the principal and interest owed under plaintiff's first claim. Defendants' assignments of error challenge the court's award of the principal and interest on plaintiff's second claim and the court's award of attorney fees on both plaintiff's claims. We will first address the propriety of the summary judgment in relation to the court's award of the principal and interest allegedly due on the $50,000.00 note under plaintiff's second claim.

The promissory note for $50,000.00, which defendants executed and delivered to plaintiff on 21 April 1981, is encompassed in the G.S. 25-3-104 definition of a negotiable instrument. Article 3 of the Uniform Commercial Code controls in determining whether the court properly granted summary judgment for plaintiff here.

G.S. 25-3-603(1) provides that "[t]he liability of any party is discharged to the extent of his payment or satisfaction to the holder . . . ." The question arises as to whether the 29 July 1981 note was executed by defendants and delivered to plaintiff as "payment and satisfaction" of the 21 April 1981 note. While there is, as of yet, no North Carolina case dealing with this issue, it has been suggested that this "is a question of intention whether the taking of the note satisfied the earlier obligation, a question to be determined by all the facts and circumstances (what was the state of the bank's knowledge, what did the bank do with the old notes, etc.)." J. White and R. Summers, *Uniform Commercial Code* § 13-19, p. 447 (1972). See also R. Anderson, 3 *Uniform Commercial Code* § 3-603:7 (2 ed. 1971).

In the present case the record clearly discloses the intent of the parties at the time the 29 July 1981 note was executed and delivered. Notes on the Commercial Loan Memorandum, made by

J. Allen Knox, an employee of plaintiff, stated the intent of plaintiff. Those notes stated

> These comments are to document further the conversion of the $50,000 loan documented 4/21/81 to a term loan. The above individuals operate under the names of two companies (1) Mid-American Franchise Services, Inc. (MAFS) which is a management company that has taken over management and ownership of the stores formerly owned by Harmon's, Mutt's Stores consisting of twelve restaurants and another seafood chain of 21 restaurants, and (2) McRob and McMar, a partnership which is owned by the same individuals. McRob and McMar was to have just the Harmon's stores, but we are now informed by Bob Martin and David McKee that MAFS corporations owns the Harmon's four stores which are located in Statesville, Mooresville and Mocksville. This credit is based largely on the financial strength of the above individuals but the loan must be put in the name of the corporation since it now owns all the assets formerly owned by Harmon's. This is a change from the original intent as explained to me by Darrell McKean and the other partners in May, 1981. It has taken from May 15 until now to get this loan secured. It develops that Adrian A. Roberts, one of the key men in the operation, had not been attending to his responsibilities nor passing the messages along to the other partners that it was necessary to sign a new note and security agreement with NCNB. B. G. Martin, stockholder and attorney for the company, wanted us to replace the $50,000 note signed by all four individuals with the secured note. I told him we could not do this and would have to hold that note as additional collateral to the note. The justification for this was that two of the officers were not present to personally sign the new secured note and that the bank could not release any one of them from liability. This is a matter of getting the $50,000 loan secured and amortized as it was supposed to have been the latter part of May. David McKee states that he has not been able to put together a financial statement on Mid-American Franchise Services, Inc. but will provide one as soon as it is available. We are still keeping the individuals personally responsible for this loan. Approval of this credit as structured is recommended.

By affidavit, J. Allen Knox further stated that

Martin and McKee requested of your affiant on July 29, 1981, that the note of April 21, 1981, be considered paid in full and returned to them; your affiant stated to Martin and McKee that he knew nothing about the ability of the corporation to pay its note for $50,000 and that NCNB would agree to accept the note of the corporation in that amount only on condition that NCNB hold the note of April 21, 1981, as security for the corporate note, such that if the corporate note were not paid NCNB would look for payment from the individuals who had signed the note on April 21, 1981. The note of the corporation dated July 29, 1981, was accepted by NCNB on that condition.

At the 5 February 1982 hearing he further testified

A. Well, their intention was, as expressed by Mr. Martin, to pay that note and for us to cancel it. To start with all of the partners or all of the members, officers of the corporation were not present in order to get personal guarantees or get them personally responsible for corporate debt. One partner had already left the area to parts unknown. It was not our intention, and I so stated, to release the individuals from personal liability. We would have to hold the original note signed by the individuals as collateral to the Mid-American Franchise note, in addition to the collateral that Mid-American Franchise Services owned.

Q. Did either Mr. Martin or Mr. McKee ask you to return to them the note of April 21, 1981?

A. Well, I'm not sure in those words that they did but they fully expected to take it and Mr. McKee did state to the counselor, he said, Counselor, I thought we were bringing that note back with us.

Q. You had previously told them that you had to keep that as security for the corporate debt?

A. Right, uh-huh.

*    *    *

Q. Why did you not on that occasion, Mr. Knox, just take the note of the corporation and hand them back the note of April 21st, 1981?

A. Well, with the information that they gave me, you know, it is not our policy to lend to a corporation that we have no information, no financial information on. We just don't do that. It was an effort to obtain collateral for the note from the individuals in order that the bank's position would be secure.

At the 5 February 1982 hearing defendant McKee testified

Q. And the suggestion was made on that date that the individual debt incurred by the four of you on April 21, 1981, be transferred to a corporate debt?

A. That was what was on the documents as they were in draft form for our execution.

Q. And it was your purpose in coming here to effect that result, wasn't it?

A. One of them, yes, sir.

Q. And you wanted the old note of April 21st, 1981, returned to you on that date, didn't you?

A. I did, yes, sir.

Q. Mr. Knox said he couldn't return it to you, didn't he?

A. Yes, sir.

Q. He told you that he was going to hold that note as security for payment of whatever new note the corporation signed on July 29th, 1981, didn't he?

A. We did not, to the best of my recollection, we did not discuss that to any great detail. He said, and he listed it on the security statement that he had to keep the note.

Q. And you knew that he was going to keep the note, didn't you?

A. Yes, sir.

Q. And you know, do you not, Mr. McKee, that on July 29th, 1981, Biscuitland signed a note, or Mid-American Franchise, I think, signed a note for $50,000.00?

A. Yes, sir.

Q. And you know that on that date Mid-American Franchises, Inc., did not get from North Carolina National Bank $50,000, don't you?

\*    \*    \*

Q. You got less than $1,000.00?

A. Yes, sir.

The above evidence, in conjunction with the fact that the 29 July 1981 security agreement listed the 21 April 1981 promissory note as collateral, shows "that there is no genuine issue as to any material fact and that . . . [plaintiff] is entitled to a judgment as a matter of law." G.S. 1A-1, Rule 56(c). The 29 July 1981 note was not a "payment and satisfaction" under G.S. 25-3-603, and defendants were not released from personal liability for the $50,000.00 debt.

The result under G.S. 25-3-603 is the same as that under the common law principle of novation.

Defendants' plea of payment, if sustained, would require us to hold that a creditor who accepts from his debtor the obligation of a third person takes it in payment, releasing the debtor from his obligation irrespective of the intent with which the new obligation is assigned and accepted. The law is otherwise. It is, we think, correctly stated by Clark, C.J., in *Grady v. Bank*, 184 N.C. 158, 113 S.E. 667: "The note of a third person given for a prior debt will be held a satisfaction, where it was agreed by the creditor to receive it absolutely as payment, and to run the risk of its being paid. The onus of establishing that it was so received is on the debtor. But there must be a clear and special agreement that the creditor shall take the paper absolutely as payment or it will be no payment if it afterwards turns out to be of no value. A receipt in full of an account does not establish an agreement on the part of the creditor to accept as absolute payment at his

own risk the note of a third person for the debt." [Citations omitted.]

*F. D. Cline Paving Co. v. Southland Speedways, Inc.,* 250 N.C. 358, 361-62, 108 S.E. 2d 641, 643-44 (1959).

Defendants' final assignments of error challenge the trial court's award of attorneys fees on each of plaintiff's claims. As to plaintiff's second claim, defendants allege that since they had paid off the 21 April 1981 promissory note by replacing it with the 29 July 1981 secured note, the trial court erroneously granted summary judgment in favor of plaintiff on their claim for principal, interest and attorney fees. Since we have already held that the 29 July 1981 note did not constitute payment and satisfaction of the 21 April 1981 note, we find no merit in defendants' challenge of the trial court's grant of attorney fees on plaintiff's second claim.

[4]   Similarly, we find no merit in defendants' assignment that the trial court erred when it awarded plaintiff attorney fees on its first claim. The original note, signed by Harmon's Food Store, Inc., provided that

> Failure to pay any installment of this note, either principal or interest, as and when due shall, at the option of said Bank or any holder hereof, render the entire balance of principal and interest on this note immediately due and payable. In the event the indebtedness evidenced hereby or liabilities as defined herein be collected by or through an attorney at law, the holder shall be entitled to collect reasonable attorneys' fees.

The assumption agreement, signed by defendants, provided that

> 2. The parties hereto agree that nothing herein shall be understood or construed (a) to amount to a satisfaction or release in whole or in part of any of the obligations in the note or security interest, or of the property conveyed by the security interest from the effect thereof, or (b) to impair the right to power of sale if any, or other remedies provided for under the terms of the note and security agreement provided by law for the collection of the debt.

We hold that the language "or other remedies provided for under the terms of the note and security agreement provided by

law for the collection of the debt," when viewed in conjunction with the original note's provision for attorney fees, is sufficient to place on defendants liability for attorney fees incurred by the plaintiff during collection of the debt. *EAC Credit Corporation v. Wilson*, 281 N.C. 140, 187 S.E. 2d 752 (1972), relied on by defendants, is distinguishable since the defendants in that case merely signed a guaranty for payment, as opposed to the facts here where defendants signed an assumption agreement and in effect became the maker of the original note.

For the above reasons the decision of the Superior Court is

Affirmed.

Judges WELLS and BECTON concur.