Hart v. DWM Advisors, LLC, 2026 NCBC 28.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
21CVS015763-590

STEVEN C. HART,

               Plaintiff,

v.

DWM ADVISORS, LLC and JOSEPH
P. DAVIS, III,

               Defendants.

**ORDER AND OPINION GRANTING
MOTION FOR DEFAULT JUDGMENT
AGAINST JOSEPH P. DAVIS, III AND
DWM ADVISORS, LLC**

1. This matter is before the Court on Plaintiff's motion for entry of a default judgment against defendants Joseph P. Davis, III and DWM Advisors, LLC pursuant to Rule 55 of the North Carolina Rules of Civil Procedure, (ECF No. 96).

2. Having considered all appropriate matters of record, the Court **GRANTS** the motion and enters a default judgment accordingly.

*Mauney PLLC, by Gary V. Mauney, for Plaintiff Steven C. Hart*

*DWM Advisors, LLC, Unrepresented Defendant*

*Joseph P. Davis, III, Unrepresented Defendant*

Houston, Judge.

## I.    <u>BACKGROUND</u>

3. As default has been entered against defendants DWM Advisors, LLC and Joseph P. Davis, III, (ECF No. 102), the Court accepts the well-pleaded allegations in the complaint as true for purposes of resolving the motion for default judgment. *See Bell v. Martin*, 299 N.C. 715, 721 (1980) ("When default is entered due

to defendant's failure to answer, the substantive allegations raised by plaintiff's complaint are no longer in issue, and for the purposes of entry of default and default judgment are deemed admitted.").

4.      Plaintiff Steven C. Hart alleges a multi-year scheme by DWM, Davis, and prior defendants First Oak Wealth Management, LLC and Airis Alexander Abolins[1] to exploit their positions of authority as Plaintiff's financial advisors and to defraud or otherwise improperly divest Plaintiff of his investment capital. (*See generally* ECF No. 3).

5.      In short, Plaintiff is a North Carolina hydrogeologist with no background or expertise in securities, finance, or investment planning, and in 2009, he contracted with Defendants to help him invest personal funds. (ECF No. 3, ¶¶ 3, 15, 65, 68–69).

6.      Around June 2009, Plaintiff met Davis, a North Carolina citizen and resident, who held himself out as a registered investment adviser and managing director of DWM Advisors, LLC, a North Carolina limited liability company. (ECF No. 3, ¶¶ 5–6, 18, 66).

7.      Shortly after various discussions, Plaintiff entered into an advisory agreement with DWM, appointing DWM as his investment advisor and granting DWM "full power" to control the assets in Plaintiff's investment account in return for

---

[1] All causes of action asserted against defendants Abolins and First Oak were resolved previously by an Order and Opinion on Motions for Summary Judgment entered by the Court (Earp, J.) on 14 March 2025, (ECF No. 73), and by a subsequent notice of voluntary dismissal with prejudice filed by Plaintiff on 1 December 2025, (ECF No. 92). The Court thereafter amended the caption in this matter to accurately reflect the remaining parties. (ECF No. 98 at 1 n.1).

annual management fees. Under the agreement, Defendants were able to control Plaintiff's funds without prior authorization or approval from Plaintiff. Further, the agreement provided that DWM was a registered investment adviser and that DWM was a fiduciary with respect to Hart's account. (ECF No. 3, ¶¶ 19, 21, 23, 68–69). Plaintiff also entered into the agreement based on Davis's work as "managing director" of "Davis Wealth Management of [defendant] DWM Advisors, LLC," with the understanding that Davis would act in Plaintiff's best interests as his financial advisor. (ECF No. 3, ¶¶ 66–69 (alterations in original)).

8.     After Plaintiff became a client, DWM (through Davis and Abolins) periodically provided Plaintiff with a Form ADV, a disclosure required by the U.S. Securities and Exchange Commission ("**SEC**"). DWM also provided other supplemental disclosures from time to time. (ECF No. 3, ¶¶ 71–72). For instance, in April 2011, DWM provided both a Form ADV and a supplemental disclosure representing, among other things, that DWM had no disciplinary events to report, that DWM had adopted internal practices to limit the potential for conflicts of interest, and that DWM had adopted a Code of Ethics that required its advisers to act in good faith on behalf of clients. The DWM disclosure also represented that Davis was not involved in any other business activities and had no other income to disclose. (ECF No. 3, ¶¶ 71–73, 75).

9.     After the parties formed an advisory relationship, rather than investing in publicly traded securities, Defendants invested Hart's money in undercapitalized, non-viable companies in which they had direct or indirect ownership interests that

were not disclosed to Plaintiff. Though many of the companies were teetering on the brink of insolvency, Defendants advised Plaintiff that these investments were in his best interests. In turn, rather than using the funds to maintain or grow Plaintiff's investment or for Plaintiff's benefit, Defendants used Plaintiff's funds to help avoid insolvency of those entities. With their scheme, Defendants also received consulting fees based on Plaintiff's investment in these private companies and otherwise benefited substantially from their actions. (ECF No. 3, ¶¶ 25–29, 84–175).

10. Defendants never informed Plaintiff of these conflicts of interest or of the scope of Defendants' self-dealing transactions, and Plaintiff was not otherwise aware of the conflicts. (ECF No. 3, ¶¶ 25–29, 84–175).

11. In the years after the parties established their investment relationship, Defendants and their representatives at various times represented, in disclosures provided to Plaintiff, that Davis was not engaged in other businesses and had no other income or compensation to disclose, that DWM had not been disciplined by regulators, and that DWM and Davis were in good standing to continue investing Plaintiff's funds as his registered investment advisors. (ECF No. 3, ¶¶ 30–31, 72, 75–76, 88).

12. In early 2017, Abolins formed First Oak Wealth Management as a North Carolina limited liability company and purchased DWM's securities accounts. (ECF No. 3, ¶¶ 37–38). First Oak also registered and was approved as an investment adviser in North Carolina. (ECF No. 3, ¶¶ 40, 42–43).

13. During this process, Davis disassociated from DWM as an investment adviser, though Abolins maintained his registration status with the SEC. (ECF No. 3, ¶ 41).

14. In March 2017, the South Carolina Securities Commissioner concluded that Davis, on behalf of DWM, had made inappropriate investment recommendations to clients and that he had failed to disclose conflicts of interest to clients. As a result, Davis and DWM were barred from participating in the securities industry in South Carolina. Defendants did not disclose these determinations to Plaintiff, nor was he otherwise aware of them. (ECF No. 3, ¶¶ 31–33).

15. Also around March 2017, DWM filed its Form ADV with the SEC and made multiple false statements and material omissions concerning Defendants' licensure status, business activities, securities advisory services, and other matters, including a failure to report the administrative action by the South Carolina Securities Commissioner. (ECF No. 3, ¶¶ 73–84).

16. Ultimately, Defendants both concealed information about, and affirmatively misrepresented, their advisory services, the status of regulatory proceedings against them, and substantial other information concerning their business activities, and these misrepresentations induced Plaintiff to continue investing funds through Defendants. (ECF No. 3, ¶¶ 74–84).

17. Once First Oak was approved as an investment advisor by the relevant division of the North Carolina Secretary of State, it shifted DWM's client accounts to First Oak, pitching the transition largely as a branding change, with customers still

working with Davis and others at First Oak. (ECF No. 3, ¶¶ 43–48). Though Davis was not registered as an investment advisor in North Carolina and had been barred in South Carolina, this was not disclosed to First Oak's clients. (ECF No. 3, ¶¶ 45–48).

18.     Ultimately, Davis never registered as an investment advisor in North Carolina, and Plaintiff was never informed that Davis was acting as an unregistered investment adviser. (ECF No. 3, ¶¶ 43, 46–48).

19.     On 17 May 2017, the SEC sanctioned Davis and barred him from association with any investment adviser based in large part upon his failure to disclose conflicts of interest in investments when giving financial advice, but Defendants failed to inform Plaintiff of this action and instead maintained that things were "business as usual." (ECF No. 3, ¶¶ 49–51).

20.     Following a 2019 investigation, a division of the North Carolina Secretary of State's office determined that Defendants had violated multiple North Carolina securities regulations, including via Davis's work as an unregistered investment advisor and Defendants' failure to inform their clients of Davis's disbarment from the securities industry. Based on violations of North Carolina securities law and regulations, largely those involving Davis and his wrongful conduct, the Securities Division of the Secretary of State's office issued a cease-and-desist order against First Oak and assessed fines against the company. Nonetheless, Defendants failed to disclose these actions to Plaintiff. (ECF No. 3, ¶¶ 52–60).

21. Around the same time, Defendants also made false representations and omissions regarding the investigations and disciplinary actions taken against Davis and First Oak in communications with Plaintiff. (ECF No. 3, ¶¶ 77–82).

22. Davis was an agent and representative of defendant DWM and was authorized by DWM to act on its behalf in all respects in connection with the relationship with Plaintiff.

23. Plaintiff compensated Defendants for advising and directing him in the valuation and purchase of securities and otherwise in the course of managing Plaintiff's securities portfolio.

24. A relationship of trust and confidence existed between Plaintiff and Defendants, as his purported financial advisors, and Defendants represented to Plaintiff that they would act as his fiduciary and in his best interests. Defendants took advantage of their position of trust and confidence vis-à-vis Plaintiff to benefit themselves and to Plaintiff's detriment. (*E.g.*, ECF No. 3, ¶¶ 179–192).

25. Defendants made myriad affirmative misrepresentations of material facts to Plaintiff while also concealing other material facts in the course of the parties' relationship. Those misrepresentations were reasonably calculated and intended to deceive Plaintiff and did, in fact, deceive Plaintiff. Plaintiff reasonably relied on Defendants' misrepresentations in continuing to invest with Defendants and to allow them to possess, invest, and otherwise control his funds. (*E.g.*, ECF No. 3, ¶¶ 193–256).

26. As a direct result of Defendants' conduct, Plaintiff incurred investment losses in the amount of at least $525,117.00, and paid advisory fees in the amount of at least $103,799.87, for a total principal amount of at least $628,916.87 in damages and harm.

27. Plaintiff's damages are documented by ample evidence in the record, including the deposition testimony of Plaintiff's accounting expert, Gregory T. Reagan.

28. Plaintiff would not have expended or lost those amounts or otherwise incurred those damages if not for Defendants' conduct at issue.

29. On 1 October 2021, Plaintiff filed this action in Mecklenburg County Superior Court, asserting causes of action against Defendants for (i) constructive fraud, (ii) common law fraud, (iii) violation of the North Carolina Investment Advisers Act, N.C. Gen. Stat. § 78C-38 *et seq.* ("**NCIAA**"), (iv) negligent misrepresentation, (v) violation of the North Carolina Racketeer Influenced and Corrupt Organizations Act, N.C. Gen. Stat. § 75D-1 *et seq.* ("**RICO**"), and (vi) civil conspiracy, and (6) punitive damages. (ECF No. 3, ¶¶ 193–289).[2]

30. Thereafter, Defendants were properly served with process between October and November 2021 and had their attorney request from Plaintiff's counsel

---

[2] In its Order and Opinion on Motions for Summary Judgment, the Court granted summary judgment in favor of Abolins and First Oak as to Plaintiff's causes of action for fraud, negligent misrepresentation, and violation of the NCIAA on the grounds that these claims were barred because the statutes of limitations had expired. (ECF No. 73, ¶ 146). For purposes of default judgment, however, "trial courts have no authority to raise the statute of limitations defense on their own initiative"; instead, "the defendant must assert this affirmative defense or it is waived." *Unifund CCR v. Francois,* 260 N.C. App. 443, 445 (2019.)

an extension of time to respond to the complaint on 3 November 2021, though they did not subsequently file a motion requesting that relief. (ECF No. 93, ¶¶ 1–3 & Exs. A–C). Consistent with N.C. Gen. Stat. § 1–75.10 and § 1–75.11, Plaintiff submitted an affidavit of service demonstrating personal jurisdiction over Defendants. (ECF No. 93).

31. Defendant Davis was even deposed in this action on 16 November 2022. (ECF No. 92, ¶ 5). At that deposition, through their attorney, Defendants acknowledged that they were properly served with process no later than 3 November 2021. (ECF No. 93, ¶¶ 1, 3 & Exs. B–C).

32. In seeking an extension of time from Plaintiff's counsel through their attorney and otherwise agreeing to be deposed in this action, Defendants made an appearance in this action under Rule 55 for purposes of entry of a default judgment. *E.g.*, *Stanaland v. Stanaland*, 89 N.C. App. 111, 114 (1988) (determining that, for purposes of default judgment, defendant made an "appearance" under Rule 55 by agreeing "to meet with plaintiff and her attorney"; explaining that "negotiations for settlements or continuances whether by letter or by meeting, after the complaint is filed, constitute appearances within the meaning of Rule 55(b)(2)"); *Roland v. W & L Motor Lines, Inc.*, 32 N.C. App. 288, 289 (1977) ("In fact, an appearance may arise by implication when a defendant takes, seeks, or agrees to some step in the proceedings that is beneficial to himself or detrimental to the plaintiff."; determining that defendant "appeared" by sending a letter to plaintiff's attorney and the clerk of court);

---

Accordingly, as Defendants have not asserted these defenses in this action, the Court will not *sua sponte* do so on their behalf. *Id.*

*N.C. Nat. Bank v. McKee*, 63 N.C. App. 58, 61 (1983) (determining that "defendants had made an appearance through their settlement negotiations with plaintiff" (citations omitted)); *Webb v. James*, 46 N.C. App. 551, 556–57 (1980) ("Depending on the particular circumstances, communications between parties relative to giving the defendant an extension of time in which to plead have been considered an "appearance" within the meaning of Rule 55(b)(2). In addition, negotiations between parties after the institution of an action may constitute an appearance." (internal citations omitted)).

33. Nonetheless, despite proper service of process on both Defendants, neither Defendant ever answered or otherwise responded to the complaint, and the time within which to do so has long expired. (ECF No. 102).

34. On 9 November 2021, this case was designated as a mandatory complex business case and assigned to the Honorable Julianna Earp before being reassigned to the undersigned on 14 July 2025. (ECF Nos. 1–2, 85).

35. On 10 December 2025, Plaintiff filed motions for entry of default and a default judgment against Defendants. (ECF Nos. 94–95). In support of his motions, Plaintiff attached excerpts and exhibits from the deposition of Mr. Reagan, but he did not provide the full deposition transcript. (ECF Nos. 96.1–96.2).

36. In an Order entered 12 December 2025, the Court directed Plaintiff to file with the Court a full, certified copy of the transcript, along with any evidence Plaintiff wished for the Court to consider in determining whether Mr. Reagan should be qualified as an expert and the subjects and topics as to which Plaintiff sought to

have Mr. Reagan qualified for purposes of the evidence offered. The Court also required Plaintiff to serve the motion, briefs, and supporting documents on Defendants via first-class U.S. Mail and provide the addresses for such service. (ECF No. 98).

37. Over the course of several months, Plaintiff provided several filings and additional supporting evidence, including evidence regarding his damages. (*E.g.*, ECF Nos. 100, 100.1, 100.2, 103, 103.1, 103.2). With his filings, Plaintiff tendered Mr. Reagan as an expert in forensic accounting, damages, the value of the investments made on behalf of Plaintiff, and the impairments of those values. (ECF No. 100 at 2).

38. Defendants were also served with copies of the motions for entry of default and for a default judgment. (ECF No. 100).

39. On 18 March 2026, the Court entered default against Defendants. (ECF No. 102).

40. Unsurprisingly, Defendants did not respond to Plaintiff's motions for entry of default and for a default judgment, and the Court therefore considers the motion uncontested pursuant to Rule 7.6 of the Business Court Rules.

41. Defendant DWM is or was a North Carolina limited liability company and, as a non-human, necessarily cannot be in active military service. (ECF No. 50.68 (affidavit confirming that DWM is a "company")).[3]

---

[3] The Court takes judicial notice of DWM's filings with the North Carolina Secretary of State reflecting that it was registered as a North Carolina limited liability company before being administratively dissolved on 20 November 2024. DMV Advisors, LLC, N.C. SEC'Y ST., https://sosnc.gov/online_services/search/profile_filings/9102262 (last visited Mar. 30, 2026).

42.    Based upon the evidence of record, Defendants are not minors, not incompetent, and not in active military service. (*See, e.g.*, ECF Nos. 103, 103.1, 103.2 (SCRA affidavit and related evidence as to defendant Davis)).

II.    <u>ANALYSIS</u>

43.    As default has been entered against Defendants, the allegations of Plaintiff's complaint are deemed admitted as against Defendants. *Bell*, 299 N.C. at 721.

44.    The Court has personal jurisdiction over Defendants and jurisdiction over the subject matter of this action.

45.    Although Defendants are deemed to have admitted the allegations in the complaint, for the Court to enter default judgment against Defendants, the complaint still must state a claim. *Brown v. Cavit Scis., Inc.*, 230 N.C. App. 460, 467 (2013) ("A complaint which fails to state a cause of action is not sufficient to support a default judgment for plaintiff." (citation omitted)); *Beem USA Limited-Liability Ltd. P'ship v. Grax Consulting, LLC*, 2020 NCBC LEXIS 39, at *8 (N.C. Super. Ct. Mar. 26, 2020) ("Accordingly, 'for the Court to enter default judgment, the complaint must state a cause of action.'" (citations omitted)); *JCG & Assocs. LLC v. Disaster Am. USA LLC*, 2022 NCBC LEXIS 156, at *18 (N.C. Super. Ct. Dec. 12, 2022) ("A default judgment is appropriate only if the allegations of the complaint are adequate to state a claim.").

### A.     Constructive Fraud

46.     The elements of a constructive fraud claim largely overlap with the elements of a claim for breach of fiduciary duty. *See Chisum v. Campagna*, 376 N.C. 680, 706–07 (2021). "[A] cause of action for constructive fraud must allege (1) a relationship of trust and confidence, (2) that the defendant took advantage of that position of trust in order to benefit himself, and (3) that plaintiff was, as a result, injured." *White v. Consol. Planning Inc.*, 166 N.C. App. 283, 294 (2004) (citation omitted). "The primary difference between pleading a claim for constructive fraud and one for breach of fiduciary duty is the constructive fraud requirement that the defendant benefit himself." *Id.*

47.     Considering the allegations deemed admitted from the complaint and all other appropriate matters of record, the Court concludes that Plaintiff has met his burden of properly alleging and demonstrating a basis for recovery under the theory of constructive fraud.

### B.     Fraud

48.     "The essential elements of fraud are: '(1) [f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party.'" *Rowan Cnty. Bd. of Educ. v. U.S. Gypsum Co.*, 332 N.C. 1, 17 (1992) (citation omitted). "Additionally, reliance on alleged false representations must be reasonable." *Sullivan v. Mebane Packaging Grp., Inc.*, 158 N.C. App. 19, 26 (2003) (citation omitted).

49.     Applying these principles, the Court concludes that Plaintiff has met his burden to prevail on his claim for fraud.

## C.     Violation of the North Carolina Investment Advisers Act, N.C. Gen. Stat. § 78C-1 *et seq.*

50.     The NCIAA, N.C. Gen. Stat. § 78C-1 *et seq.*, "creates a private cause of action against persons who commit primary violations of the NCIAA and for persons who are liable as control persons." *Austin v. Regal Inv. Advisors, LLC*, 2018 NCBC LEXIS 3, at *50 (N.C. Super. Ct. January 8, 2018) (citing N.C. Gen. Stat. § 78C-38). Thus, liability under the NCIAA can be primary or secondary. *Id.*; N.C. Gen. Stat. § 78C-38(a)–(b).

51.     Under the NCIAA,

> [i]t is unlawful for any person[4] who receives, directly or indirectly, any consideration from another person for advising the other person as to the value of securities or their purchase or sale, whether through the issuance of analyses or reports or otherwise, (1) [t]o employ any device, scheme, or artifice to defraud the other person, [or] (2) [t]o engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon the other person…

N.C. Gen. Stat. § 78C-8(a)(1)–(2).

52.     Primary liability under the Act exists when any person,

> (1) [e]ngages in the business of advising others, for compensation, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing, or selling securities, or

---

[4] "Person" means an individual, a corporation, a partnership, an association, a joint-stock company, a trust where the interests of the beneficiaries are evidenced by a security, an unincorporated organization, a government, or a political subdivision of a government. N.C. Gen. Stat. § 78C-2(5).

(2) [r]eceives, directly or indirectly, any consideration from another person for advice as to the value of securities or their purchase or sale, whether through the issuance of analyses, reports or otherwise and employs any device, scheme, or artifice to defraud such other person or engages in any act, practice or course of business which operates or would operate as a fraud or deceit on such other person, in violation of G.S. 78C-8(a)(1) or (2)[.]

N.C. Gen. Stat. § 78C-38(a)(1)–(2).

53. Further, secondary liability exists for

(1) [e]very person who directly or indirectly controls a person liable under subsection (a) of this section, including every partner, officer, or director of the person, every person occupying a similar status or performing similar functions, and every dealer or salesman who materially aids in the conduct giving rise to the liability is liable jointly and severally with and to the same extent as the person, unless able to sustain the burden of proof that the person did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist.

(2) Unless liable under subdivision (1) of this subsection, every employee or associate of a person liable under subsection (a) of this section who materially aids in the conduct giving rise to the liability and every other person who materially aids in the conduct giving rise to the liability is liable jointly and several with and to the same extent as the person if the employee or associate or other person actually knew of the existence of the facts by reason of which the liability is alleged to exist.

N.C. Gen. Stat. § 78C-38(b)(1)–(2).

54. When they are based on underlying fraud, causes of action for primary or secondary liability under the NCIAA generally must meet Rule 9 pleading requirements as well. *Shareff v. Lakebound Fixed Return Funds, LLC*, 2013 NCBC LEXIS 14, at *12–13 (N.C. Super. Ct. Mar. 6, 2013) (determining that a cause of action for violation of N.C. Gen. Stat. § 78C-8(a)(1) was subject to Rule 9).

55.     Here, as explained above, Plaintiff has adequately pleaded and otherwise met his evidentiary burden with respect to a fraud claim, and based on the admitted allegations of the complaint and other competent evidence of record, the Court concludes that Plaintiff has met his burden with respect to properly alleging and demonstrating a basis for recovery under the NCIAA.

### D.     Negligent Misrepresentation

56.     "It has long been held in North Carolina that 'the tort of negligent misrepresentation occurs when (1) a party justifiably relies (2) to his detriment (3) on information prepared without reasonable care (4) by one who owed the relying party a duty of care.'" *Simms v. Prudential Life Ins. Co. of Am.*, 140 N.C. App. 529, 532 (2000) (quoting *Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 322 N.C. 200, 206 (1988)). However, "[e]ven if a misrepresentation is made, plaintiff will only be able to recover if his reliance was justified." *Associated Packaging, Inc. v. Jackson Paper Mfg. Co.*, 2012 NCBC LEXIS 13, at *59 (N.C. Super. Ct. Mar. 1, 2012). "When the party relying on the false or misleading representation could have discovered the truth upon inquiry, the complaint must allege that he was denied the opportunity to investigate or that he could not have learned the true facts by exercise of reasonable diligence." *Id.* at *48–49 (citation omitted). "Under North Carolina law, omissions do not serve as a basis for a negligent misrepresentation claim." *Provectus Biopharmaceuticals, Inc. v. RSM US LLP*, 2018 NCBC LEXIS 101, at *26 (N.C. Super. Ct. Sept. 28, 2018) (citations omitted). Finally, "[w]hen alleging negligent misrepresentation, a plaintiff must satisfy the heightened pleading standard for

fraud found in Rule 9." *Oliver v. Brown & Morrison, Ltd.,* 2022 NCBC LEXIS 20, at *23 (N.C. Super. Ct. Mar. 3, 2022) (citations omitted).

57.     Here, between the now-admitted allegations of his complaint and the additional evidence of record, Plaintiff has adequately pleaded and otherwise met his evidentiary burden with respect to a claim for negligent misrepresentation. (*E.g.*, ECF No. 3, ¶¶ 265–71).

58.     However, intentional conduct generally cannot also be negligent conduct. *E.g.*, *Horne v. Cumberland Cnty. Hosp. Sys., Inc.*, 228 N.C. App. 142, 149 (2013) (affirming dismissal of a negligent infliction of emotional distress claim where it was "premised on allegations of intentional—rather than negligent—conduct" and noting that "[a]llegations of intentional conduct, . . . even when construed liberally on a motion to dismiss, cannot satisfy the negligence element of an NIED claim" (citation omitted)); *Woodard v. N.C. Dep't of Transp., Div. of Motor Vehicles*, 271 N.C. App. 180 (2020) (unpublished); *see also Jenkins v. N.C. Dep't of Motor Vehicles*, 244 N.C. 560, 563 (1956) ("[T]here is, however, general agreement that an intentional act of violence is not a negligent act."); *Sheaffer v. Cnty. of Chatham*, 337 F. Supp. 2d 709, 734 (M.D.N.C. 2004).

59.     Where the evidence would permit reasonable inferences of intent and of negligence, it nonetheless might be appropriate to submit both causes of action to the jury or other fact finder. *Lail v. Woods*, 36 N.C. App. 590, 592 (1978) (quoting *Jenkins* and explaining that it was appropriate to submit theories of assault and battery to jury); *Lynn v. Burnette*, 138 N.C. App. 435, 440 (2000) (explaining that "[n]egligence

and intentional tort have been described as mutually exclusive theories of liability" and noting that "[o]ur North Carolina Supreme Court has also acknowledged that an intentional tort and willful negligence are discrete concepts"; nonetheless, permitting plaintiff's pursuit of intentional and negligent tort claims in light of conflicting evidence).

60.     Here, by virtue of the entry of default against Defendants and the imputed complaint admissions resulting from that entry of default, Plaintiff's allegations of Defendants' intentional misrepresentations and wrongdoing are deemed admitted, and Plaintiff identifies no additional factual allegations in support of his negligent misrepresentation cause of action that would be different from or in addition to those that he contends were intentional. (*See generally, e.g.*, ECF No. 3, ¶¶ 265–71).

61.     Plaintiff will recover damages for Defendants' fraudulent misrepresentations and omissions, as set forth above, and Plaintiff may not recover twice for the same harm. *Martin v. Thotakura*, 267 N.C. App. 130, at *5 n.1 (2019) (unpublished) ("While a plaintiff, in the appropriate case, may bring these two claims in the alternative, a plaintiff is not entitled to double recovery for the same injury." (quoting *Alston v. Britthaven,* 177 N.C. App. 330 (2006))).

62.     Thus, in light of Plaintiff's recovery for fraud, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiff's negligent misrepresentation cause of action. *See Tuwamo v. Tuwamo*, 248 N.C. App. 441, 445 (2016) ("This Court has found that '[c]ourts have continuing power to supervise their jurisdiction over the subject matter

before them, including the power to dismiss *ex mero motu*.'" (alteration in original) (quoting *Narron v. Union Camp Corp.*, 81 N.C. App. 263, 267 (1986))).

**E.      North Carolina Racketeer Influenced and Corrupt Organizations Act, N.C. Gen. Stat. § 75D-1 *et seq.***

63.      "To state a claim under the N.C. RICO Act, (1) an 'innocent person' must allege (2) an injury or damage to his business or property (3) by reason of two or more acts of organized unlawful activity or conduct, (4) one of which is something other than mail fraud, wire fraud, or fraud in the sale of securities, (5) that resulted in pecuniary gain to the defendant[s]." *Gilmore v. Gilmore*, 229 N.C. App. 347, 356 (2013) (quoting *In re Bostic Constr., Inc.*, 435 B.R. 46, 68 (Bankr. M.D.N.C. 2010) (internal quotation marks omitted)).

64.      North Carolina law defines "racketeering activity" as a "means to commit . . . an act or acts which would be chargeable by indictment if such act or acts were accompanied by the necessary 'mens rea' under Chapter 14 of the General Statutes of North Carolina." N.C. Gen. Stat. § 75D-3(c)(1). A "pattern of racketeering activity" is defined to require "[e]ngaging in at least two incidents of racketeering activity that have the same or similar purposes, results, accomplices, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics" within a four-year period of time. N.C. Gen. Stat. § 75D-3(b). Section 75D-3(c)(1) enumerates specific North Carolina statutory provisions, the violation of which serves as a predicate action to support a RICO claim. 'Racketeering activity' also includes the description in Title 18, United States Code, Section 1961(1)." N.C. Gen. Stat. § 75D-3(c)(2).

65. As the Court (Earp, J.) recognized and agreed in ruling on the motions for summary judgment filed by former defendants Abolins and First Oak, "the misconduct alleged [in Plaintiff's complaint] is not the sort of activity that the General Assembly intended to constitute a violation of the N.C. RICO Act claim." *Hart v. First Oak Wealth Mgmt., LLC*, 2022 NCBC LEXIS 81, at *60–61 (agreeing with the moving defendants' arguments and quoting *Avadim Health, Inc. v. Harkey*, 2021 NCBC LEXIS 104, at *31 (N.C. Super. Ct. July 28, 2022)).

66. Here, even with the well-pleaded allegations of Plaintiff's complaint deemed admitted, the same rule holds for reasons the Court articulated in that Order and Opinion, and Plaintiff should not recover on his RICO cause of action. *See generally id.* at *59–63.

67. Accordingly, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiff's RICO cause of action. *See Tuwamo*, 248 N.C. App. at 445; *Maola Ice Cream Co. of N.C., Inc. v. Maola Milk & Ice Cream Co.*, 238 N.C. 317, 324 (1953) ("If the cause of action, as stated by the plaintiff, is inherently bad, why permit him to proceed further in the case, for if he proves everything that he alleges he must eventually fail in the action." (citations omitted)).

### F. Civil Conspiracy

68. "Civil conspiracy is not an independent cause of action in North Carolina. Rather, liability for civil conspiracy must be alleged in conjunction with an underlying claim for unlawful conduct." *Glob. Textile All., Inc. v. TDI Worldwide, LLC*, 2018 NCBC LEXIS 104, at *18 (N.C. Super. Ct. Oct. 9, 2018) (citing *Toomer v.*

*Garrett*, 155 N.C. App. 462, 483 (2002)). Indeed, the Supreme Court of North Carolina has explained that

> [a]ccurately speaking, there is no such thing as a civil action for conspiracy. The action is for damages caused by acts committed pursuant to a formed conspiracy, rather than by the conspiracy itself; and unless something is actually done by one or more of the conspirators which results in damage, no civil action lies against anyone. The gist of the civil action for conspiracy is the act or acts committed in pursuance thereof—the damage—not the conspiracy or the combination. The combination may be of no consequence except as bearing upon rules of evidence or the persons liable.

*Reid v. Holden*, 242 N.C. 408, 414–15 (1955) (citation omitted).

69.     To recover for a civil conspiracy, a plaintiff must demonstrate "'(1) an agreement between two or more individuals; (2) to do an unlawful act or to do a lawful act in an unlawful way; (3) resulting in injury to plaintiff inflicted by one or more of the conspirators; and (4) pursuant to a common scheme.'" *Glob. Textile All.*, 2018 NCBC LEXIS 104, at \*18–19 (quoting *Piraino Bros., LLC v. Atlantic Fin. Grp., Inc.*, 211 N.C. App. 343, 350 (2011)). However, proof of a civil conspiracy "does no more than associate the defendants together. The gravamen of the action is the resultant injury, and not the conspiracy itself." *Henry v. Deen*, 310 N.C. 75, 87 (1984) (internal citations omitted).

70.     Here, considering all appropriate matters of record, the Court concludes that Plaintiff has met his burden for a default judgment based upon a civil conspiracy involving Defendants. (*E.g.*, ECF No. 3, ¶¶ 281–84).

### G.   Punitive Damages

71.   While Plaintiff requested punitive damages in his complaint, (ECF No. 3, ¶ 285–89), Plaintiff subsequently and expressly waived and withdrew that request. (ECF No. 97 at 5 n.2). Accordingly, the Court deems that request **WITHDRAWN** and does not further address it.

### H.   Default Judgment

72.    Under Rule 55 of the North Carolina Rules of Civil Procedure, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or is otherwise subject to default judgment as provided by these rules or by statute and that fact is made to appear by affidavit, motion of attorney for the plaintiff, or otherwise, the clerk shall enter his default."[5] N.C. R. Civ. P. 55(a). After entry of default, a default judgment may be entered by the clerk or the Court. N.C. R. Civ. P. 55(b).

73.   Here, Plaintiff has complied with the requirements of Rule 55, and entry of a default judgment in favor of Plaintiff and against Defendants is appropriate.

74.   Default judgment in favor of Plaintiff and against Defendants is appropriate in the principal compensatory amount of $628,916.87.

75.   Further, Plaintiff is entitled to interest at the legal rate of eight percent (8%) on the principal compensatory amount of $628,916.87 beginning 1 October 2021 (the date the action was instituted) and continuing until the judgment is paid in full.

---

[5] "Although the Rule provides that entry is to be made by the clerk, the judge has concurrent jurisdiction and can order entry of default." *Ruiz v. Mecklenburg Utils., Inc.*, 189 N.C. App. 123, 126 (2008).

*See* N.C. Gen. Stat. § 24-5(b) ("In an action other than contract, the portion of [the] money judgment designated by the fact finder as compensatory damages bears interest from the date the action is instituted until the judgment is satisfied. Interest on an award . . . shall be at the legal rate."); (*see also* ECF No. 3).

76. Defendants' liability to Plaintiff should be joint and several.

## III. CONCLUSION

77. Therefore, in the exercise of its discretion and for good cause shown, the Court **GRANTS** Plaintiff's motion for a default judgment and **ENTERS JUDGMENT BY DEFAULT** against defendants Joseph P. Davis, III and DWM Advisors, LLC, jointly and severally, and in favor of Plaintiff in the principal amount of **$628,916.87**, with interest accruing thereon at the legal rate of eight percent (8%) from 1 October 2021 until this judgment is satisfied in full.

78. All recoverable costs of this action are **ASSESSED** and **TAXED** against Defendants.

      **SO ORDERED**, this 30th day of March 2026.

/s/ Matthew T. Houston
_____
Matthew T. Houston
Special Superior Court Judge
 for Complex Business Cases